RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

CAROLYN C. BARR,

        *Defendant-Appellant,*

CHARLES J. BARR; COMERICA
INCORPORATED; CITY OF DETROIT and
COUNTY OF WAYNE,

        *Defendants.*

No. 09-1710

> Appeal from the United States District Court
> for the Eastern District of Michigan at Ann Arbor.
> No. 07-11717—John Corbett O'Meara, District Judge.

Argued: April 21, 2010

Decided and Filed: August 4, 2010

Before: BATCHELDER, Chief Judge; ROGERS, Circuit Judge; GREER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Neal Nusholtz, LAW OFFICE, Birmingham, Michigan, for Appellant. John A. Nolet, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Neal Nusholtz, LAW OFFICE, Birmingham, Michigan, for Appellant. John A. Nolet, Thomas J. Clark, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

    ROGERS, J., delivered the opinion of the court, in which GREER, D. J., joined. BATCHELDER, C. J. (pp. 10-15), delivered a separate opinion concurring in part and dissenting in part.

_____

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

―――――――――――

**OPINION**

―――――――――――

ROGERS, Circuit Judge. The Government seeks to foreclose the federal income tax debt owed by Charles Barr against the home that he and his wife Carolyn own as tenants by the entirety. Mrs. Barr argues on appeal, as she did before the district court, that she is entitled to the vast majority of the sale proceeds of any foreclosure sale and that foreclosure is not appropriate based on her dominant interest in the home and other equitable factors. Because spouses owning property as tenants by the entirety are entitled to equal distribution of proceeds under all circumstances contemplated by Michigan law, such an equal division is also proper in this case. In light of this equal division, the district court correctly determined that foreclosure was appropriate.

Charles Barr owed the Government more than three hundred thousand dollars in unpaid income taxes, interest, and other statutory accruals. The Government filed suit seeking to foreclose the federal tax lien created by these debts against the home in Detroit, Michigan, that Mr. Barr and his wife Carolyn Barr own as tenants by the entirety. Mr. Barr did not file a response in the case, and the district court granted default judgment against Mr. Barr in the amount of his tax debt. The Government then filed a motion for summary judgment on its foreclosure claim. Mrs. Barr opposed the motion and asked the district court to exercise its limited equitable discretion to decline to order the sale of the home. She argued in particular that, because she was likely to outlive her husband, her interest in the home was more than fifty percent of the value of the home. She contended that foreclosure was therefore inappropriate because of her larger interest and because only her husband had unpaid federal tax liabilities. The Government argued that an equal division was appropriate under Michigan law and that Mrs. Barr had assisted in shifting properties other than the home out of Mr. Barr's name and into her name. The Government thus urged the conclusion that Mrs. Barr bore some of the responsibility for the fact that the Government could only collect taxes from Mr. Barr by foreclosure. The district court held that an equal division of any proceeds was

appropriate, and the court refused to exercise its equitable discretion to prevent the foreclosure sale. Mrs. Barr now appeals, arguing primarily that the district court erred in determining that she was only entitled to half of the proceeds of any foreclosure sale.

Mrs. Barr is entitled to fifty percent of the proceeds of the foreclosure sale of the home. Title 26 U.S.C. § 7403 authorizes federal courts to decree a sale of property to enforce a federal tax lien. When such a foreclosure sale takes place, the proceeds are to be distributed "according to the findings of the court in respect to the interests of the parties and of the United States," thus providing fair compensation both to the Government and to any third parties. *Id.* § 7403(c). In determining property interests for federal tax law purposes, "the definition of underlying property interests is left to state law, [and] the consequences that attach to those interests is a matter left to federal law." *United States v. Rodgers*, 461 U.S. 677, 683 (1983). Under Michigan law, Mr. and Mrs. Barr have identical rights to their marital home. Indeed, spouses are entitled to equal interests in entireties property in every situation contemplated by Michigan law. Spouses are "equally entitled to the rents, products, income, or profits . . . of real . . . property held by them as tenants by the entirety." Mich. Comp. Laws § 557.71. If property held by the entirety is sold, each spouse is entitled to half of the proceeds, and upon divorce, state law provides for a default equal division of such property. *Id.* § 552.102; *United States v. Craft*, 535 U.S. 274, 282 (2002). Under 26 U.S.C. § 7403(c), the "distribution of the proceeds" of a tax foreclosure sale is made "according to the findings of the court in respect to the interests of the parties and of the United States." Because Mr. and Mrs. Barr have equal interests in their home, division according to their interests results in an equal distribution of the proceeds of the sale of that home. The Third Circuit has reached the same conclusion in the context of distributing the proceeds of the market sale of a federal tax-encumbered home that had been owned by a married couple as tenants by the entirety. *Popky v. United States*, 419 F.3d 242, 245 (3d Cir. 2005). The Third Circuit noted that Pennsylvania entireties law was materially similar to that of Michigan, *id.* at 244, and reasoned as follows:

> As the District Court correctly observed, "the equal division of assets between spouses . . . parallels the distribution of entireties property when

> an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons." Sound policy reinforces the District Court's approach to valuation, as an equal valuation is far simpler and less speculative than the valuation contemplated by the [married couple].

*Id.* at 245 (citations omitted) (first alteration in original).

Detailed consideration of the component interests of a tenancy by the entirety reinforces this intuitive conclusion. A tenancy by the entirety under Michigan law consists of at least the following rights:

> the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the [the other spouse]'s consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the [the other spouse]'s consent, and the right to block [the other spouse] from selling or encumbering the property unilaterally.

*Craft*, 535 U.S. at 282. Mrs. Barr asserts that her right of survivorship and her right to prevent sale or encumbrance of the property are worth more than her husband's survivorship and sale-prevention rights, but both of these rights generate equal spousal interests.

Michigan law dictates the result that survivorship rights are equal between spouses. If the spouse with the greater life expectancy had a larger interest under Michigan law, then this greater interest would be reflected in the Michigan rules for dividing property upon divorce or consensual sale. However, because Michigan law provides for equal division of property upon divorce or consensual sale, differences in life expectancy do not result in different survivorship interests.

This conclusion is consistent with *Rodgers*. In *Rodgers*, Lucille Rodgers was the widow of Philip Bosco, a tax debtor. 461 U.S. at 687. Rodgers and her husband had owned and occupied their home as a homestead under Texas law. *Id.* Texas law provides that, at the death of one spouse, the other spouse "has a vested estate in the [homestead property] of which she cannot be divested during her life except by

abandonment or a voluntary conveyance." *Id.* at 686 (quoting *Paddock v. Siemoneit*, 218 S.W.2d 428, 436 (Tex. 1949)).  Rodgers thus effectively had a life estate in her marital home.  *See id.* at 686.  The *Rodgers* Court held that the Government could force a sale of the home under § 7403 to satisfy Bosco's tax debt.  *Id.* at 703-04.  Recognizing that Rodgers was entitled to a share of the proceeds of that sale corresponding with her interest in the homestead property, the Court offered, "*only for the sake of illustration*," an example of how such property might be valued.  *Id.* at 698-99 (emphasis in original).  The Court suggested that a proper way to value Rodgers's life estate would be to assume an eight percent discount rate, assume that Rodgers would live to her life expectancy, and thus calculate her share of the property's value.  *Id.*  This kind of actuarial calculation is not appropriate in the present case.  *Rodgers* used actuarial valuation only out of necessity: one cannot determine the value of a life estate—which is effectively what Rodgers possessed—without estimating the length of the measuring life.  The Supreme Court thus based its choice of valuation method on the fact that "any calculation of the cash value of a homestead interest must of necessity be based on actuarial statistics."  *Id.* at 704.  No such necessity exists here, and Mrs. Barr presents no compelling reason why this court should not apply the presumption of equal spousal life expectancy implicit in Michigan law.

Mrs. Barr's right to prevent sale also does not support her contention that her interest in the marital home is greater than that of her husband.  Mrs. Barr asserts first that her right to prevent sale must have some value, and that this value must increase her interest in the property.  This argument overlooks the fact that the ban on unilateral alienation is both a benefit and a detriment to owners of entireties property.  Mrs. Barr's sale-prevention right enhances her interest because she can prevent a sale desired only by Mr. Barr.  But the same rule detracts from her interest, as she cannot sell or encumber her interest in the property without Mr. Barr's permission.  Because these rights are precisely reciprocal between spouses, they have no net effect on the relative interests of spouses who own property as tenants by the entirety.

Relying by analogy on Takings Clause precedents, Mrs. Barr secondly asserts that the fact that she is being deprived of her right to prevent sale distinguishes the present situation from a consensual sale, and thus undermines the conclusion that Michigan law implicitly supports an equal assignment of interests. In upholding § 7403 as consistent with the Fifth Amendment, the Supreme Court in *Rodgers* noted that, "[t]o the extent that third-party property interests are 'taken' in the process [of a tax foreclosure], § 7403 provides compensation for that 'taking' by requiring that the court distribute the proceeds of the sale 'according to the findings of the court in respect to the interests of the parties and of the United States.'" 461 U.S. at 697-98. Mrs. Barr is correct that the exercise of the Government's power to force the sale of her home deprives her of her right to refuse a sale, and she is not specifically being compensated for that loss. But this is consistent with the general rule under the Takings Clause that property owners are paid only the fair market value of their property when they are forced to part with it against their will. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9-10 (1984). "'Under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking.'" *Id.* at 10 (quoting *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979)) (internal quotation marks omitted). The Supreme Court has acknowledged that, "[p]articularly when property has some special value to its owner because of its adaptability to his particular use, the fair-market-value measure does not make the owner whole." *Id.* at 10 n.15. But "[w]e are willing to tolerate such occasional inequity because of the difficulty of assessing the value an individual places upon a particular piece of property and because of the need for a clear, easily administrable rule governing the measure of 'just compensation.'" *Id.* The present situation is distinguishable from a consensual sale only in that Mrs. Barr is being forced to sell the home against her will. Because the Takings Clause does not require compensation for such a loss, Takings Clause jurisprudence supports the conclusion that Mrs. Barr should receive no more here than she would receive after a consensual sale: fifty percent.

Mrs. Barr also asserts that she has an interest in the home greater than half of its value based on a variety of theories that would result in the total of her and her

husband's interests in the property's being greater than one hundred percent.  Such a result is not possible under § 7403, which requires courts to distribute "the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."  One cannot distribute more than the total value of the sale price, and thus the total of all of the interests in the property—including that of the United States—must be one hundred percent.

The district court therefore correctly determined that Mrs. Barr is entitled to fifty percent of the proceeds of the foreclosure sale.  This conclusion renders moot Mrs. Barr's argument that, if this court were to overturn the district court's finding with respect to valuation, remand would be appropriate to determine whether the equities continued to support a sale of the home.

Mrs. Barr also argues that the district court erred in granting summary judgment because it failed to conduct in a proper manner the balancing test described in *Rodgers*. This argument fails because the *Rodgers* Court did not mandate application of the four-factor balancing test before a district court could order a sale under § 7403.  To the contrary, the *Rodgers* Court established the balancing test as a requirement only after the district court first determines that a § 7403 sale would cause undue hardship to an innocent third-party; before exercising its limited discretion not to order the sale, a district court must justify that decision by means of the *Rodgers* balancing test.  This conclusion is supported by the *Rodgers* Court's declaration that the Government has a "paramount interest" in collecting taxes, 461 U.S. at 711, and follows established precedent in the Seventh Circuit, *United States v. Davenport*, 106 F.3d 1333, 1338 (7th Cir. 1997) (holding that application of the *Rodgers* factors "is not a prerequisite to a district court's power to decree a sale under § 7403").

Even if the *Rodgers* Court had intended to mandate application of its four-part balancing test prior to any court-ordered foreclosure sale under § 7403, we would still affirm the decision of the district court, as there is no evidence that the district court abused its discretion.  In determining that foreclosure was appropriate, the district court applied the four *Rodgers* factors:

(1) "the extent to which the Government's financial interest would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) "the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation;" and (4) "the relative character and value of the non-liable and liable interests held in the property."

*United States v. Barr*, No. 07-11717, 2008 WL 4104507, at *2 (E.D. Mich. Sept. 2, 2008) (quoting *Rodgers,* 461 U.S. at 710-11). The district court determined that the first factor weighed in favor of foreclosure because "the United States cannot look to any other assets of [Mr. Barr] to collect." *Id.* at *3. The district court noted that, under normal circumstances, the second factor would weigh against foreclosure. *Id.* The court, however, found that Mrs. Barr had "participated in the conveyance of four properties . . . specifically contemplated to frustrate the United States' tax collection efforts," and thus the court determined that this factor was not entitled to much weight. *Id.* (citing *United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991)). With respect to the third factor, the district court determined that "[t]he inconvenience of [Mrs. Barr's] relocating is no different from the inconvenience associated with any foreclosure sale and is insufficient to support a denial of such a sale in this case." *Id.* The court explained that "if 'the inherent indignity and inequity of being removed from one's home' automatically precluded foreclosure, 'the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403.'" *Id.* (quoting *Bierbrauer*, 936 F.2d at 375-76). Finally, the district court determined that the fourth factor did not support application of the court's limited equitable discretion not to order foreclosure because Mrs. Barr had only a half interest in the property. *Id.* at *4. The district court thus found that foreclosure was appropriate and granted summary judgment to the Government. *Id.* We agree with the district court's resolution of these issues and therefore adopt the district court's thoughtful reasoning with regard to the *Rodgers* factors.

We therefore **AFFIRM** the judgment of the district court.

---

### CONCURRING IN PART, DISSENTING IN PART

---

ALICE M. BATCHELDER, Chief Judge, concurring in part and dissenting in part.  I concur with the majority opinion's conclusion that foreclosure of the residence of Charles and Carolyn Barr was appropriate pursuant to 26 U.S.C. § 7403.  The majority opinion, however, conflates two distinct issues:  (1) whether foreclosure is appropriate, in order to satisfy the tax obligations of her husband, Charles Barr; and (2) the proper distribution of the sales proceeds post-foreclosure.  The majority opinion appears to conclude that the district court was correct *because* it was also correct in determining that Mrs. Barr was entitled to only 50% of the net sales proceeds.  While I agree that foreclosure was correct, there is no legal justification for concluding, as the majority opinion does, that the propriety of foreclosure is somehow dependent upon a particular distribution of proceeds.  I also strongly reject the majority opinion's surprising conclusion that Michigan law requires us to treat a forced sale for tax purposes as identical to a consensual sale.  For these reasons, I respectfully dissent.

### A.      The District Court's Order of Foreclosure

It is undisputed that the government had the right to request, pursuant to 26 U.S.C. § 7403, that the district court order the sale of the Residence.  *United States v. Rodgers*, 461 U.S. 677, 680 (1983) (holding that § 7403 "grant[s] power to order the sale"); *United States v. Craft*, 535 U.S. 274, 283 (2002) (holding that, under Michigan law, tenants in the entirety possess sufficient property interests for federal tax liens to attach).  The power to order the sale, however, "is limited to some degree by equitable discretion" and, if the property is sold, the non-delinquent spouse is entitled to the portion of the sale proceeds "as represents complete compensation for the loss of the [property interests]."  *Rodgers*, 461 U.S. at 680.

The plain language of § 7403 indicates that a district court *may* order the sale of property, which allows the district court "limited room . . . for the exercise of reasoned

discretion." *Id.* at 706. However, the Supreme Court has stated that this discretion is limited and "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711. In determining whether to decline to authorize a sale, a district court should consider, among others, the following factors: (1) the extent to which the government's financial interests would be prejudiced if it could sell only a partial interest in the property, rather than the property as a whole; (2) whether the third party with a non-liable separate interest would, in the normal course of events, have a legally recognized expectation that the property would not be subject to a forced sale; (3) the likely prejudice to the third party, both in personal dislocation costs and practical undercompensation; and (4) the relative character and value of the non-liable and liable interests held in the property.[1] *Id.* at 710-11.

The majority opinion correctly rejects Mrs. Barr's argument that the *Rodgers* balancing test is mandatory. The majority opinion also correctly concludes that, even if the balancing test was mandatory, foreclosure would still have been required under § 7403. However, although the district court did not err in concluding that foreclosure was appropriate, it did err in its discussion of the second factor and Mrs. Barr's alleged complicity with the transfer of four Saginaw, Michigan properties in order to "frustrate the United States' tax collection efforts."

Mrs. Barr had a legal right to preclude sale of the Residence, and there is no legal justification for concluding that her participation in the transfer of the Saginaw Properties somehow eliminated that "legally recognized expectation" that the Residence could not be sold without her permission. The district court was correct that Mrs. Barr's unclean hands argue against an exercise of discretion in her favor, but that does not justify an incorrect application of the second *Rodgers* factor, especially since the

---

[1] This factor could be misinterpreted as establishing a correct division of post-foreclosure sale assets as a prerequisite for foreclosure under § 7403. However, the *Rodgers* Court was concerned only with the possibility that the third party interest might be so large as to swamp the interest of the delinquent taxpayer's interest. "[I]f, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed." *Rodgers*, 461 U.S. at 711.

*Rodgers* Court expressly stated that the four factors listed did not comprise a comprehensive list, thus allowing for other considerations.  *Rodgers*, 461 U.S. at 710. The district court should have concluded that the second factor weighed in favor of Mrs. Barr, and discussed Mrs. Barr's participation of the transfers of the Saginaw properties when considering other equitable factors relative to the proposed foreclosure.[2]

## B.       The District Court's Valuation of Property Interests

The district court is also charged with determining the proper division of sale proceeds between innocent third parties and the government.  The Supreme Court has offered the following instructions to guide that process:  (1) distribution of the sale proceeds must consider all the interests held by the parties, *Rodgers*, 461 U.S. at 681; (2) the district court must look to state law to determine each party's "bundle of sticks - a collection of individual rights which, in certain combinations, constitute property," *Craft*, 535 U.S. at 278; (3) the district court must ensure that innocent third parties receive "complete compensation" for their interests, *Rodgers*, 461 U.S. at 680;[3] (4) the district court may not award the government any more of the proceeds than the share to which it is entitled, *id.* at 699 (declaring that the provisions of § 7403 "ensur[e] that the Government not receive out of the proceeds of the sale any more than to which it is properly entitled"); and (5) the government's interest is limited to the interest held by the delinquent taxpayer, which interest must be established prior to the § 7403 order of sale, *id.* at 690-91.  These guidelines make it abundantly clear that Mrs. Barr's proposed valuation method is illogical and unsupportable.  However, the majority opinion's simplistic valuation method is similarly flawed.

The majority opinion correctly identifies the property rights Mrs. Barr possesses—a life estate, a survivor interest, and a right to prevent sale, among

---

[2]While this may seem hyper-technical, this area of the law has suffered from a lack of clarity for long enough.  We ought to clarify the analysis that the district courts should conduct in cases such as these, even at the risk of appearing hyper-technical.

[3]According to the *Rodgers* Court, it is only through awarding complete compensation to the innocent third party that § 7403 avoids any "difficulties under the Due Process Clause of the Fifth Amendment." *Rodgers*, 461 U.S. at 697.  Therefore, district courts must take care to assure that innocent third parties receive compensation for *each* property interest they possess.

others—but then loses its way by attempting to infer precisely how a Michigan court would value those property interests in a situation like this. I strongly disagree with the majority opinion's conclusion that a § 7403 forced sale is equivalent to a divorce or consensual sale, for reasons I describe in greater detail below. However, even if Michigan courts would agree with the majority opinion on this point, that conclusion is irrelevant to our consideration of the issues here, because "although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683. We are constrained to recognize the property rights Mrs. Barr possesses under Michigan law, but the issue of how those interests are to be compensated is solely a matter of federal law.

The weight of federal law argues strongly against the majority opinion's conclusion that Mrs. Barr is entitled to a simple fifty percent interest because she is a tenant by the entireties. The district court and the majority opinion rely on *United States v. Popky*, 419 F.3d 242, 245 (3d Cir. 2005), in which the Third Circuit adopted a 50/50 split for tenants by the entireties because a 50/50 split was "far simpler and less speculative," and because the Third Circuit viewed a § 7403 sale as equivalent to a consensual sale, *id.*[4] However, the far greater weight of the cases support a different approach. *See Harris v. United States*, 764 F.2d 1126, 1131-32 (5th Cir. 1985) (valuing the spouses' life estates and contingent survivor interests and determining that, based on her higher life expectancy, the wife had a 50.98% interest.); *United States v. Gibbons*, 71 F.3d 1496, 1500 (10th Cir. 1995) (requiring the valuation of an ex-wife's life estate and survivor interest and concluding that she was entitled to greater than one-half the total value of the property); *In re Pletz*, 221 F.3d 1114, 1117 (9th Cir. 2000) (holding that proper valuation requires consideration of the life expectancies of the joint tenants, and rejecting the proposition that the wife's share was limited to a half interest in the life estate).

---

[4]There is simply no legal justification for ignoring the vested property rights of litigants in order to avoid complexity and uncertainty and, while I do not believe the majority opinion was adopting that particular rationale in support of its conclusion, I believe we should explicitly reject the Third Circuit's simplicity rationale.

Likewise, while this Circuit has never directly addressed this question, our prior decisions in other contexts support a rejection of a blanket 50/50 split. In *United States v. 2525 Leroy Lane*, 910 F.2d 343 (6th Cir. 1990), this court was faced with a criminal forfeiture proceeding in which the property to be sold, via forfeiture, was held as a joint tenancy by the entireties. The court refused to sever the entireties estate and turn it into a tenancy in common because doing so "would not adequately compensate [the wife] for her survivorship interest." *Id.* at 350. Unquestionably, the wife in *2525 Leroy Lane* would have been entitled to only a one-half share of a tenancy in common, so this court has already determined that an innocent spouse's interest in a tenancy by the entireties must be valued higher than an equivalent interest in a tenancy in common if it is probable that the innocent spouse will outlive the guilty (delinquent) spouse.

Even ignoring the linguistic inconsistency of asserting that a *forced* sale and a *consensual* sale should be treated the same, treating a § 7403 forced sale as equivalent to a consensual sale or sale subsequent to a divorce also ignores a fundamental question of timing. When a divorce occurs, and the property is sold, the tenancy by the entirety is severed by the divorce decree first, and only then is the property sold. The divorce decree transforms the tenancy in the entireties into a tenancy in common, so a 50/50 split from a subsequent sale is the natural result. Similarly, when a consensual sale occurs, both parties consent to the sale, effectively surrendering their survivor interests and their right to prevent sale. Only then is the sale effectuated, and a 50/50 split is, again, the natural result. With a sale pursuant to § 7403, however, the value of the non-delinquent spouse's interests must be determined *prior* to the § 7403 order, by which the court will extinguish those rights. Valuation of property interests under § 7403 cannot occur *as if* the non-delinquent spouse had already surrendered her interests. To do so would raise the unsightly specter of a taking without just compensation. *See Rodgers*, 461 U.S. at 697 (holding that § 7403 requires compensation for every property interest that is "taken" in the process).

Mrs. Barr has legitimate property interests in her residence, and those interests cannot be simply assumed away by pretending that a § 7403 sale is the same as a

consensual sale or a sale subsequent to a divorce decree.  Supreme Court precedent demands that we protect Mrs. Barr's right to compensation for her property interests during the § 7403 process, something which the majority opinion fails to do.  The weight of case law, both from this circuit and our sister circuits, is also strongly in favor of recognizing, and requiring compensation for, Mrs. Barr's survivor interest and right to prevent sale.  Because the majority opinion fails to do either of these, I respectfully dissent.