**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0580n.06

**No. 10-1498**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FILED | | |

FILED

Aug 17, 2011

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| DEBORAH A. BARCZYK | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| _____ | ) | |
| | ) | |

**Before: GRIFFIN and WHITE, Circuit Judges; and WATSON, District Judge.**[*]

**PER CURIAM.** Deborah A. Barczyk ("Mrs. Barczyk") appeals from the district court's

order allowing the United States to foreclose on its tax lien and sell real property jointly owned by

Mrs. Barczyk and her tax-delinquent husband as tenants by the entirety. Mrs. Barczyk, who does

not owe unpaid taxes to the United States, argues that her survivorship interest in the property should

preclude the Government from selling it and, alternatively, that the district court erred in refusing

to determine the actuarial value of her ownership interest and instead awarding her a fifty percent

share. We AFFIRM.

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District
of Ohio, sitting by designation.

# I

Defendant-Appellant Mrs. Barczyk appeals the district court's grant of summary judgment in favor of the United States in this tax-lien foreclosure action. We adopt the district court's description of the factual background:

> Since 1979, [Ronald S. Barczyk ("Mr. Barczyk") and Deborah A. Barczyk, a married couple,] own a residence at 6091 Niles Drive, in Troy, Michigan ("the Niles Property"), as tenants by the entireties. The Niles Property is free and clear of debt, and, according to Defendants, worth approximately $200,000.
>
> From 1996 to 2006, inclusive, Mr. and Mrs. Barczyk filed individual federal tax returns under the status of "married filing separately." During these years, Mr. Barczyk failed to pay large amounts of federal income taxes. As a result, several tax liens were created in favor of the United States, which attached to all of Mr. Barczyk's property and property rights, including the Niles Property.
>
> In March 2009, the Government brought this action to reduce Mr. Barczyk's tax debt to judgment (Count I), and foreclose the liens that arose by virtue of this debt (Count II). Specifically, the Government seeks to have the Niles Property foreclosed and sold, with proceeds distributed according to the parties' respective interests.
>
> On September 21, 2009, this Court entered a default judgment against Mr. Barczyk, in the amount of $528,771.55 plus statutory interest and accruals until paid . . . .

Mrs. Barczyk is not liable for the taxes at issue in this case. She was named as a defendant because of her interest in the Niles Property.

Mrs. Barczyk filed a motion for summary judgment seeking a determination that the United States "cannot legally order the sale of the Property, because such a sale would, in violation of law, depriv[e] her of her survivorship expectancy in the Property." In the alternative, if the court determined that the Niles Property could be foreclosed and sold, she sought a determination that instead of splitting the proceeds of the sale equally (50/50) between herself and the United States, she should "receive a larger percentage of the net proceeds based upon actuarial [evidence] . . . that

2

she is likely to live longer than her husband, and that her interest in the net proceeds from the sale of the property is more than 50%." The United States filed a cross-motion for summary judgment seeking an order allowing it to "foreclose the federal tax liens that have attached the Niles Drive Property, order the judicial sale of the property, and order the distribution, after the costs of sale, of one-half of the sale proceeds to the United States and one-half of the sale proceeds to Mrs. Barczyk."

The district court granted the United States's motion for summary judgment, denied Mrs. Barczyk's motion, and ordered that the United States "is authorized to foreclose on its tax liens against defendant Ronald Barczyk in the amount set forth above pursuant to a judicial sale of the property commonly known as 6091 Niles Drive, Troy, Michigan 48089, and that defendant Deborah Barczyk is entitled to half of the proceeds from any such judicial sale." Mrs. Barczyk filed a Rule 59(e) motion to alter or amend the judgment, which the district court denied, and then timely appealed.

## II

### A

This Court reviews a district court's summary judgment determination de novo. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also La Quinta Corp.*, 603 F.3d at 335. We "review cross motions for summary judgment under this standard as well, evaluating each motion on its own merits." *La Quinta Corp.*, 603 F.3d at 335.

**B**

Mrs. Barczyk first argues that the Government cannot foreclose and sell the Niles Property because doing so would destroy the survivorship interest guaranteed by her tenancy by the entirety.

When a person fails to pay outstanding taxes after a demand, the Internal Revenue Code empowers the Government to place a lien "upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321, 26 U.S.C. § 6321. The Government may then enforce the lien by filing an action in district court and naming as parties all persons having an interest in the property subject to the lien. *Id.* § 7403(a)-(b). If the court finds in favor of the Government, the court may enforce the lien by "decree[ing] a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id.* § 7403(c). The purpose of this scheme "is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *United States v. Rodgers*, 461 U.S. 677, 683 (1983). Foreclosure and forced sale, with proceeds of the sale divided equitably between the United States and other parties claiming an interest in the property, will normally be the proper resolution of a § 7403 action.[1] *See id.* at 693-94 ("[W]e must read the statute to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest'

---

[1]As the Court has recognized, where third parties hold an interest in the property subject to the Government's lien, forced sale of the entire property "might pose significant difficulties under the Due Process Clause of the Fifth Amendment." *Rodgers*, 461 U.S. at 697. However, "[t]o the extent that third-party property interests are 'taken' in the process, § 7403 provides compensation for that 'taking' by requiring that the court distribute the proceeds of the sale 'according to the findings of the court in respect to the interests of the parties and of the United States.'" *Id.* at 697-98. Thus, so long as third-party interest holders are compensated as required by the statute, there is no Takings-Clause problem.

in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution.").[2]

"[A]lthough the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683. "Accordingly, '[courts] look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation.'" *United States v. Craft*, 535 U.S. 274, 278 (2002). If so, then a tax lien may attach.

Under Michigan law, spouses with a tenancy by the entirety "have identical rights to their marital home. Indeed, spouses are entitled to equal interests in entireties property in every situation contemplated by Michigan law. Spouses are 'equally entitled to the rents, products, income, or profits . . . of real . . . property held by them as tenants by the entirety.'" *United States v. Barr*, 617 F.3d 370, 373 (6th Cir. 2010) (quoting Mich. Comp. Laws § 557.71) (alterations in original). Nonetheless, each spouse individually has rights with respect to the entities property, including

> the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the [other spouse's] consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the [other spouse's] consent, and

---

[2]Section 7403 "does not require a district court to authorize a forced sale under absolutely all circumstances, and . . . some limited room is left in the statute for the exercise of reasoned discretion." *Id.* at 706; *see also id.* at 711 ("We do emphasize, however, that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes."). This discretionary power to avoid forced sale under § 7403 is not at issue in the present case.

5

the right to block [the other spouse] from selling or encumbering the property unilaterally.

*Craft*, 535 U.S. at 282.

In *Rodgers*, 461 U.S. 677, the Court considered whether § 7403 authorized forced sale of property jointly owned by spouses under Texas's homestead law when only one spouse owed delinquent taxes. The Court held that forced sale was permitted notwithstanding the non-delinquent spouse's independent homestead interest in the property under state law: "Whatever property rights [of the non-delinquent spouse] attach to a homestead under Texas law are adequately discharged by the payment of compensation, and no further deference to state law is required." *Id.* at 702. *Rodgers* addressed the interaction of § 7403 and homestead-property rights created under Texas law. In a footnote, the Court distinguished between homestead property and tenancy-by-the-entirety property, noting that there was at that time some authority for the position that "as a result of the peculiar legal fiction governing tenancies by the entirety in some States, no tax lien could attach [to tenancies by the entirety] in the first place because neither spouse possessed an independent interest in the property." *Id.* at 702 n.31. The Court further noted that "*if* the tenancy by the entirety cases are correct, they do no more than illustrate the proposition that, in the tax enforcement context, federal law governs the consequences that attach to property interests, but state law governs whether any property interests exist in the first place." *Id.*

In *Craft*, 535 U.S. 274, the Court explicitly addressed "whether a tenant by the entirety possesses 'property' or 'rights to property' to which a federal tax lien may attach." *Id.* at 276. *Craft* arose in circumstances similar to the present case. A Michigan-resident husband owed several hundred thousand dollars of unpaid income taxes, resulting in a federal tax lien attaching to real

6

property held by both spouses as tenants by the entirety. *Id.* Looking to Michigan law, the Court determined that tenants by the entirety each hold a number of property rights in entireties property and that those rights qualify as "property" or "rights to property" for the purposes of the federal tax-lien statute, I.R.C. § 6321. *Id.* at 281-88. Thus, even though under Michigan law "[l]and held by husband and wife as tenants by entirety is not subject to levy under execution on judgment rendered against either husband or wife alone," *Id.* at 288 (quoting *Sanford v. Bertrau*, 169 N.W. 880, 881 (Mich. 1918)), pursuant to federal law, tax liens may attach. This is because "[t]he interpretation of 26 U.S.C. § 6321 is a federal question, and in answering that question we are in no way bound by state courts' answers to similar questions involving state law. As we elsewhere have held, exempt status under state law does not bind the federal collector." *Id.* (internal quotation marks and citation omitted).

*Craft* did not address whether, once a federal tax lien attaches to Michigan tenancy-by-the-entirety property, a district court may, pursuant to § 7403, order foreclosure and forced sale of the property over the objections of the non-delinquent spouse. Mrs. Barczyk thus argues that, "because under Michigan law, it would be impossible to destroy the survivorship expectancy of a spouse, . . . but permitting a judicial sale under Federal law would destroy that survivorship expectancy," a forced sale is impermissible because it is "effectively substituting Federal law for Michigan law."

After the parties filed their principal briefs in this case, a panel of the Sixth Circuit decided *Barr*, 617 F.3d 370. *Barr* affirmed a district court's order of foreclosure and forced sale of property owned by spouses as tenants by the entirety under Michigan law. The primary issue in *Barr* was the defendant's argument that "she is entitled to the vast majority of the sale proceeds of any foreclosure sale." *Barr*, 617 F.3d at 372-73. Mrs. Barczyk's claim — that foreclosure and forced sale is not

7

available under § 7403 in any case involving a tenancy by the entirety where only one spouse owes unpaid taxes — was not directly addressed in *Barr*. However, in reaching the issue of the proper valuation of the non-defaulting spouse's interest in the property and the share of the foreclosure-sale proceeds to which she is entitled, the court's ruling was implicitly predicated on the understanding that there is no bar to ordering a forced sale of entireties property over the objection of a non-liable spouse. *Barr* is persuasive authority on this point; but even if this issue has not been completely decided by *Barr*, the district court was correct that it has the power to order foreclosure and sale of entireties property to which a federal tax lien has attached.

The law is clear that under the federal tax code courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Craft*, 535 U.S. at 278 (citation and some internal quotation marks omitted). Thus, "although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683. It is now without question that federal tax liens may attach to tenancy-by-the-entirety property in Michigan. *See Craft*, 535 U.S. at 288. Further, the Supreme Court has held that, once a tax lien properly attaches to jointly-held marital property — in *Rodgers*, Texas homestead property — a district court may order a forced sale of that property. *Rodgers*, 461 U.S. at 693-94. Mrs. Barczyk argues that differences in the rights flowing from homestead property under Texas law and entireties property under Michigan law require a departure from the rule set out in *Rodgers*. However, in so arguing, Mrs. Barczyk confuses the two analytical steps dictated by the Supreme Court's cases. As the district court explained, "Mrs. Barczyk's argument conflates the

8

different analyses used to determine when a lien attaches to property, and how to enforce it. The former requires consideration of state law; the latter does not." *Craft* has settled the question whether a tax lien may attach to entireties property in Michigan, looking in part to Michigan law to determine whether the delinquent taxpayer had property rights in the entireties property. And *Rodgers* directs that once a tax lien attaches, federal law governs and permits forclosure and forced sale. *See Rodgers*, 461 U.S. at 693-94 ("[W]e must read the statute [§ 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution."). Thus, we AFFIRM the order of the district court permitting the government to forclose and sell the Property.[3] Although losing ownership of the Niles Property as a result of her husband's tax delinquency is certainly a harsh outcome for Mrs. Barczyk, that result is compelled by the expansive reach of the enforcement provisions of § 7403.

## C

Mrs. Barczyk next argues that, if a forced sale is permitted, she is entitled to more than fifty percent of the proceeds because, actuarially, she is likely to outlive her husband and thus has a greater probability of exercising her survivorship interest. However, that argument is now foreclosed

---

[3]This outcome is consistent with the determinations of other circuits in similar cases. *See Popky v. United States*, 419 F.3d 242, 244 (3d Cir. 2005) (holding that a federal tax lien may attach to tenancy-by-the-entirety property in Pennsylvania, and validating judicial sale of the property pursuant to the lien); *In re Pletz*, 221 F.3d 1114, 1118 (9th Cir. 2000) ("Federal law . . . explicitly allows a lien creditor like the IRS to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife."); *United States v. Davenport*, 106 F.3d 1333, 1336-37 (7th Cir. 1997) (relying on *Rodgers* to determine that a federal court may order the forced sale of tenancy-by-the-entirety property in Illinois once a federal tax lien has attached).

by *Barr*. *Barr* rejected the non-delinquent defendant-spouse's argument that she was entitled to a greater share of the proceeds of the foreclosure sale "because she was likely to outlive her husband, [and thus] her interest in the home was more than fifty percent of the value of the home." *Barr*, 617 F.3d at 372. The court held that because tenants by the entirety "have equal interests in their home, division according to their interests results in an equal distribution of the proceeds of the sale of that home." *Id.* at 373. Thus, the non-defaulting spouse "is entitled to fifty percent of the proceeds of the foreclosure sale of the home," with the other fifty percent going to the Government to satisfy the defaulting spouse's tax debt. *Id.* *Barr*'s fifty-percent rule is binding on this panel. *See Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) ("This panel is without authority to overrule binding precedent, because a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985))).

*Barr* leaves open a narrow opportunity for non-liable spouses to avoid the presumption of equal division of the foreclosure-sale proceeds. Discussing Supreme Court dicta in *Rodgers*, *Barr* notes that "*Rodgers* used actuarial valuation only out of necessity. . . . No such necessity exists here, and [the non-defaulting spouse] presents no compelling reason why this court should not apply the presumption of equal spousal life expectancy implicit in Michigan law." *Id.* at 374. However, it is not necessary to evaluate here the extent of any "compelling reason" exception left open by *Barr* because, as in *Barr*, Mrs. Barczyk presents no compelling reason for departing from the presumption of equal division. Mr. and Mrs. Barczyk are of similar ages (approximately five years' difference), so this is not a case where an atypically-wide age difference indicates that one spouse is nearing the

end of life while the other expects to exercise rights in the entireties property for many more years. Mrs. Barczyk identifies no other potentially compelling factors. Therefore, the district court's determination that the proceeds of the foreclosure sale should be split equally between Mrs. Barczyk and the United States is AFFIRMED.

## III

We **AFFIRM** the judgment of the district court.

**HELENE N. WHITE, Circuit Judge** (concurring).  As the majority opinion notes, we are bound by the fifty-percent-allocation rule announced in *United States v. Barr*, 617 F.3d 370, 373 (6th Cir. 2010).  I write separately, however, to note my disagreement with the reasoning and outcome of *Barr*.  Governing Supreme Court precedent makes clear that the federal government has the power to foreclose and force sale of tenancy-by-the-entirety property in Michigan.  Until *Barr*, however, it was unresolved in this circuit how to distribute the proceeds of a post-foreclosure forced sale.  As observed by Chief Judge Batchelder in her partial dissent in *Barr*, "[t]he weight of federal law argues strongly against the majority opinion's conclusion that [a non-defaulting spouse] is entitled to a simple fifty percent interest because she is a tenant by the entireties."  *Id.* at 379 (Batchelder, C.J., concurring in part and dissenting in part).  Like Chief Judge Batchelder, I believe that an automatic fifty-percent valuation of the non-defaulting spouse's interest in the property is incorrect, and that courts should consider actuarial evidence in calculating the spouses' respective shares in the property.  Nevertheless, because there is nothing to distinguish the facts of this case from those of *Barr*, we are compelled to affirm the district court's valuation of Mrs. Barczyk's interest in the Niles Property.