RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

                        No. 15-1696

DIANE DAVIS,

                *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:13-cv-11245—Terrence George Berg, District Judge.

Decided and Filed:  March 9, 2016

Before:  DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:**  Neal Nusholtz, NEAL NUSHOLTZ, P.C., Troy, Michigan, for Appellant.  Joan I. Oppenheimer, Douglas C. Rennie, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Diane Davis appeals from the district court's orders allowing the federal government to enforce its tax lien and sell the real property owned by Diane Davis and her tax-delinquent husband.  Diane Davis, who does not owe any unpaid taxes, argues that the district court should have allowed the government to sell only her husband's interest in the property.  She also argues that the district court's order of sale violates

1

26 U.S.C. § 7403 and the Fifth Amendment's Just Compensation Clause.  We **AFFIRM** the district court's judgment.

## I.  BACKGROUND

Ronald Davis, the sole owner of Dav-Tyre, Inc., did not pay federal employment taxes from 2008 to 2011.  R. 1 (Compl. ¶ 9) (Page ID #3–4).  Liable for the taxes, interest, and statutorily mandated penalties, Ronald Davis owed the government over $1 million by 2013.  *Id.* After multiple demands for payment went unanswered, the government filed a civil suit against Ronald Davis to reduce its tax assessments to judgment.  *Id.* ¶¶ 9–10 (Page ID #3–4).  The government also sought to enforce its tax liens through the sale of the Davises' Michigan residence and their vacation home.  *Id.* ¶¶ 11–18 (Page ID #4–6).  Though Ronald Davis's wife, Diane Davis, did not owe any unpaid taxes, the government named her as a defendant in the action because she had an interest in the properties:  Ronald Davis and Diane Davis held both properties as tenancies by the entirety.  *See id.* ¶ 4 (Page ID #2); *see also* R. 19 (Mot. for Partial Summ. J. at 10) (Page ID #70).

The Davises filed an answer and, shortly thereafter, stipulated to the sale of their vacation home.  R. 6 (Answer) (Page ID #15); R. 11 (Joint Disc. Plan ¶ 1) (Page ID #35).  Before the close of discovery, the government filed a motion for partial summary judgment addressing the two remaining claims:  reducing to judgment the tax assessments against Ronald Davis and enforcing the government's lien on Ronald Davis's interest in the primary residence.  R. 19 (Mot. for Partial Summ. J.) (Page ID #61).  The government argued that there was no dispute that Ronald Davis was liable for the tax assessments against him and that the federal tax liens attached to his interest in the primary residence such that the district court should order the sale of that residence.  *Id.* at 3 (Page ID #63).

Ronald Davis conceded that he was liable for the over $1 million in unpaid federal employment taxes and penalties.  R. 23 (Resp. to Mot. for Partial Summ. J. by Ronald Davis at 1) (Page ID #150).  Diane Davis filed a separate response, arguing that a forced sale of the residence would leave her undercompensated because it would assume that she and her husband have equal interests in the property, notwithstanding her claim that she has a greater interest due

to her longer life expectancy. R. 22 (Resp. to Mot. for Partial Summ. J. by Diane Davis at 1–2) (Page ID #122–23). She explained that women have longer life expectancies than men, and that she is in good health but her husband "has heart disease, a stint [sic] and is a diabetic." *Id.* at 4–5, 12–13, 22–23) (Page ID #125–26, 133–34, 143–44); *see also* R. 22-1 (Diane Davis Aff. ¶¶ 8–9) (Page ID #149).

While the government's motion for partial summary judgment was pending, the Davises sold their vacation home. *See* R. 24 (Mot. to Preserve Claim of Expenses of Sale at 1–2) (Page ID #152–53); R. 56 (Tr. of Mot. H'rg at 6) (Page ID #399). Once it received its portion of the proceeds, the government discharged its lien against the vacation property, making the two claims asserted in the government's motion for partial summary judgment the sole remaining claims in the case. *See* R. 56 (Tr. of Mot. H'rg at 12–14) (Page ID #405–07).

After hearing oral argument on the government's motion for partial summary judgment, the district court granted the motion, rejecting Diane Davis's arguments. R. 33 (Dist. Ct. Op.) (Page ID #281); *see also* R. 31 (Notice of Hr'g) (Page ID #277). The district court explained that it had limited discretion not to order a forced sale of the property under *United States v. Rodgers*, 461 U.S. 677, 710–11 (1983), and that the factors articulated in *Rodgers* did not support an exercise of that discretion. R. 33 (Dist. Ct. Op. at 4–6) (Page ID #284–86). The district court also noted that, although the *Rodgers* factors were not exhaustive, Diane Davis's argument that her longer life expectancy translated into a greater interest in the property was "largely rejected" by Sixth Circuit precedent. *Id.* at 5–6 and n.1 (Page ID #285–86). Diane Davis filed a motion for reconsideration, R. 34 (Mot. for Recons.) (Page ID #289), which the district court denied, R. 41 (Dist. Ct. Order Denying Mot. for Recons.) (Page ID #340).

The district court issued an order of sale authorizing the Property Appraisal and Liquidation Specialists ("PALS") of the Internal Revenue Service ("IRS") to sell the residence through an auction. R. 42 (Order of Sale ¶ 1) (Page ID #346). Diane Davis objected to the order of sale on the grounds that sales through PALS typically yield only "80% of fair market value," which she claimed deprived her of just compensation under § 7403 and the Fifth Amendment. R. 44 (Obj. to Order of Sale at 1–2) (Page ID #355–56). A week later, a PALS employee placed a "for sale" sign on the Davises' front lawn. R. 45 (Mot. for Stay at 1) (Page ID #362). Diane

Davis filed a motion to stay the district court's order of sale, citing Federal Rule of Civil Procedure 62(a), which provides for an automatic stay during the fourteen days following an entry of judgment.  *Id.* at 1–2 (Page ID #362–63); *see also* Fed. R. Civ. P. 62(a) ("Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry.").  She also noted that she might appeal the decision.  R. 45 (Mot. to Stay at 2) (Page ID #363).  The district court granted Diane Davis's motion to stay, concluding that a stay was appropriate until it ruled on her objections to the order of sale.  R. 47 (Dist. Ct. Order Staying Order of Sale) (Page ID #368).  It did not reach the question of whether a stay would be appropriate pending an appeal.  *Id.*

The government filed a supplemental brief in response to Diane Davis's objection to the order of sale, stating that it would agree to a sale by a realtor "so long as the sale [was] at arms-length and [took] place within four months," after which PALS would be authorized to sell the property.  R. 48 (Government's Suppl. Br. at 1) (Page ID #370).  Diane Davis rejected the government's offer.  R. 49 (Resp. to Government's Suppl. Br. at 1–2) (Page ID #372–73).  The government filed a separate response to Diane Davis's motion to stay, arguing that because she had not demonstrated a substantial likelihood of success on the merits, an extension of the stay pending an appeal would be improper.  R. 50 (Resp. to Mot. for Stay) (Page ID #375).

The district court upheld the order of sale, rejecting Diane Davis's objection.  R. 53 (Dist. Ct. Order Denying Obj. and Mot. to Stay at 2) (Page ID #382).  The district court explained that *Rodgers*, which acknowledges that the sale of a third party's interests could be considered a taking, requires only that "courts [] distribute the proceeds of the sale according to the respective interests of the parties," and "says nothing about which foreclosure sales methods are proper." *Id.* (emphasis removed).  In light of the government's supplemental brief, however, the district court amended the order to give the Davises four months to sell their residence through a realtor, after which PALS would be authorized to sell it by auction.  *Id.* at 4 (Page ID #384).  The district court declined to extend the stay pending an appeal, concluding that Diane Davis could not demonstrate a substantial likelihood of success on the merits.  *Id.* at 4–8 (Page ID #384–88).

Diane Davis appealed three of the district court's orders:  the denial of her motion for reconsideration, the order of sale, and the denial of her objection to the order of sale and her

motion to stay.[1]  R. 54 (Notice of Appeal) (Page ID #390).  We denied a separate motion to stay, *United States v. Davis*, No. 15-1696 (6th Cir. Sept. 29, 2015), as well as a petition for reconsideration, *United States v. Davis*, No. 15-1696 (6th Cir. Oct. 15, 2015).

## II.  JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 26 U.S.C. §§ 7401 and 7403.  We have jurisdiction under 28 U.S.C. § 1291, which authorizes us to hear "appeals from all final decisions of the district courts."  Here, the final decision was the order of sale, "because it ends the litigation and leaves nothing but execution of the court's decision, the standard definition of 'final' under § 1291.'"  *United States v. Williams*, 796 F.3d 815, 817 (7th Cir. 2015).

## III.  ANALYSIS

The failure to pay federal taxes after demand from the government converts the amount owed (including interest and penalties) into "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321; *see also United States v. Craft*, 535 U.S. 274, 288–89 (2002) (applying § 6321 to tenancies by the entirety).  The government may then enforce that lien in federal district court under 26 U.S.C. § 7403(a)–(b), naming all persons with an interest in the property as defendants.  The district court has authority to determine all claims and liens against the property and, if it finds that the government has established a claim or lien, "may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."  26 U.S.C. § 7403(c).  Although the statute contemplates the sale of the entire property, not merely the delinquent taxpayer's interest, "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances."  *Rodgers*, 461 U.S. at 706.  The statute's permissive language leaves "limited room . . . for the exercise of reasoned discretion."  *Id.*

---

[1]It is unclear whether the auction has taken place.  Though it was scheduled for January 21, 2016, the property was discovered on January 7, 2016 to have water damage.  *See* R. 62 (Supp. Br. re Mot. to Amend at 1–2) (Page ID #457–58).

Diane Davis argues that the district court should have limited the government to the sale of her husband's interest in the residence instead of allowing the sale of the entire property. She also argues that there are genuine disputes of material fact that preclude summary judgment and that the district court's order of sale violates § 7403 and the Fifth Amendment's Just Compensation Clause.

## A. Whether the District Court Should Have Limited the Government to the Sale of the Delinquent Taxpayer's Interest

We review a district court's decision to order the sale of a property for abuse of discretion. *United States v. Winsper*, 680 F.3d 482, 489 (6th Cir. 2012). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010) (internal quotation marks omitted). Here, Diane Davis argues that the district court did not properly weigh her argument that, as a practical matter, she will be undercompensated by the sale of the entire property. Appellant Br. at 12, 23–25.

The *Rodgers* Court articulated four factors to guide a district court in the exercise of its limited discretion not to authorize the forced sale of an entire property: "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; "whether the third party with a nonliable separate interest in the property would, in the normal course of events . . . , have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors"; "the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation"; and "the relative character and value of the nonliable and liable interests held in the property." 461 U.S. at 709–11. Though not an "exhaustive list," the Court observed that these four factors "will almost always be paramount" in a district court's decision to exercise its limited discretion. *Id.* The term "practical undercompensation" refers to the Court's statement, made earlier in its opinion, that "in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head." *Id.* at 704. The Court suggested that this kind of undercompensation was likely to arise in the case of a "homestead interest" (the type of interest

at issue in *Rodgers*) where "the nature of the market for life estates or the market for rental property may be such that the value of a homestead interest, calculated as some fraction of the total value of a home, would be less than the price demanded by the market for a lifetime's interest in an equivalent home."**[2]** *Id.*

Diane Davis argues that she will suffer practical undercompensation from the sale of the entire property because she has a longer life expectancy, and thus a greater interest in the property, than her husband. Appellant Br. at 12–25. Though only eight months younger than Ronald Davis, Diane Davis suffers from only "osteoporosis and minor arthritis," whereas her "husband has heart disease, has a stint [sic], and has diabetes." R. 22-1 (Diane Davis Aff. ¶¶ 8–9) (Page ID #149). Diane Davis argues that these differences in health, as well as her gender, support a finding that she has a longer life expectancy than her husband. Appellant Br. at 12–25, 31. Even if she does have a longer life expectancy, however, Diane Davis cannot establish that this translates into a greater interest in the property. In determining parties' respective interests "for federal tax law purposes, 'the definition of underlying property interests is left to state law, [and] the consequences that attach to those interests is a matter left to federal law.'" *United States v. Barr*, 617 F.3d 370, 373 (6th Cir. 2010) (alterations in original) (quoting *Rodgers*, 461 U.S. at 683). In *Barr*, we observed that Michigan law dictates that "spouses are entitled to equal interests in entireties property in every situation [it] contemplate[s]." *Id.* (citing Mich. Comp. Laws § 557.71). Faced with an argument similar to the one Diane Davis raises here, we concluded that "because Michigan law provides for equal division of property upon divorce or consensual sale, differences in life expectancy do not result in different survivorship interests." *Id.* at 374. Though we acknowledged that there may be circumstances where an actuarial valuation of survivorship interests is warranted, such as when determining the value of a life estate (which requires estimating the length of the measuring life), *Barr* held that a tenancy by the entirety does not present such circumstances. *Id.* Thus, our precedent precludes Diane Davis's argument that a longer life expectancy results in a greater interest in a property held in a

---

**[2]** We have assumed that *Rodgers*'s concern over practical undercompensation, like the Court's discussion of § 7304, is not confined to homestead interests. *See, e.g.*, *Winsper*, 680 F.3d at 491–92 (discussing district court's application of the *Rodgers* factors to a tenancy by the entirety).

tenancy by the entirety under Michigan law.  Accordingly, we conclude that the district court did not abuse its discretion by ordering the sale of the entire property.

It is worth noting that even if Diane Davis could establish that an actuarial valuation is appropriate and that she has a longer life expectancy and therefore a greater interest in the residence—a finding of practical undercompensation, followed by an order of the sale of the entire property, would not necessarily amount to an abuse of discretion.  *Rodgers*, 461 U.S. at 709–11.  Practical undercompensation is only part of one of the four non-exhaustive factors discussed in *Rodgers*.  *See id*.

**B.  Whether There are Genuine Disputes of Material Fact that Preclude Summary Judgment**

Diane Davis also appeals the district court's grant of summary judgment.  We review a grant of summary judgment de novo, applying the same standard as the district court.  *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).  Diane Davis argues that there are genuine disputes of material fact that preclude summary judgment:  whether she has a longer life expectancy than her husband, whether her and her husband's use of the residence is non-rivalrous and non-exclusive, and whether she will receive sufficient funds from the sale of the residence to purchase an interest in an equivalent home.  Appellant Br. at 30–33.  However, these disputes (which are not actually disputes as the government does not offer contradictory evidence) do not involve material facts.  *See* Fed. R. Civ. P. 56(a).  Substantive law determines whether disputes over facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Diane Davis's claimed disputes are all aimed at demonstrating practical undercompensation.  As discussed above, practical undercompensation is only part of one factor, and this factor is only one of four non-exhaustive factors that a district may, but is not required to, consider in deciding whether to exercise its limited discretion not to order the sale of an entire property.  *Id.* at 709–11.  These claimed disputes would not affect the outcome of the suit and therefore do not involve material facts.  *See Barr*, 617 F.3d at 375–76 (rejecting an argument that the district court erred in granting summary judgment because it did not properly weigh the factors outlined in *Rodgers*, as

*Rodgers* "did not mandate" consideration of the factors). Diane Davis's argument is essentially the same argument considered above cloaked in summary-judgment language: that the district court abused its discretion by ordering the sale of the entire property. We therefore affirm the district court's grant of summary judgment.

**C.   Whether the District Court's Order of Sale Violates § 7403 and the Fifth Amendment's Just Compensation Clause**

Finally, Diane Davis argues that the district court's order of sale violates § 7403 and the Fifth Amendment's Just Compensation Clause. Appellant Br. at 25–28. Both of these arguments involve questions of law, which we review de novo. *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 404 (6th Cir. 2005). The district court's order of sale gives PALS authority to sell the residence and specifies that the sale must be through a public auction.[3] R. 42 (Order of Sale ¶¶ 1–2(a)) (Page ID #346–47). Diane Davis contends that a sale by auction violates § 7403(d), which she asserts "only permits sale by a receiver." Appellant Br. at 25. This is incorrect. Though § 7403(d) provides that a district court "*may* appoint a receiver," it does not require it to do so. 26 U.S.C. § 7403(d) (emphasis added). Diane Davis also contends that a sale by auction violates the Fifth Amendment's Just Compensation Clause because it will yield less than the fair market value of the residence. Appellant Br. at 25–26. *Rodgers* considered whether § 7403 might violate the Fifth Amendment, but concluded that § 7403 provided adequate protection for non-delinquent taxpayers:

> Admittedly, if § 7403 allowed for the gratuitous confiscation of one person's property interests in order to satisfy another person's tax indebtedness, such a provision might pose significant difficulties under the Due Process Clause of the Fifth Amendment. But, as we have already indicated, § 7403 makes no further use of third-party property interests than to facilitate the extraction of value from those concurrent property interests that *are* properly liable for the taxpayer's debt. To the extent that third-party property interests are "taken" in the process, § 7403 provides compensation for that "taking" by requiring that the court distribute the proceeds of the sale "according to the findings of the court in respect to the interests of the parties and of the United States."

---

[3]The district court later amended its order of sale to give the Davises four months to sell their home through a realtor. R. 53 (Dist. Ct. Order Denying Obj. and Mot. to Stay at 3–4) (Page ID #383–84). Though Diane Davis acknowledges this amendment, Appellant Br. at 25, she does not explain why it was inadequate.

461 U.S. at 697–98 (footnote omitted).  Thus, under *Rodgers*, "so long as third-party interest holders are compensated as required by the statute, there is no Takings–Clause problem." *United States v. Barczyk*, 434 F. App'x 488, 491 n.1 (6th Cir. 2011).  Without any other relevant support for her argument, Diane Davis cannot establish that the district court's order violates the Fifth Amendment's Just Compensation Clause.  We therefore affirm the district court's order of sale.

## IV.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's orders granting summary judgment and allowing the government to enforce its tax lien and sell the Davises' primary residence.