**RAYBRO ELECTRIC SUPPLIES, INC., Plaintiff,**

v.

**D.J. BARCLAY et al., Defendants.**

**No. C89–0124–BG(M).**

United States District Court, W.D. Kentucky, at Bowling Green.

Oct. 27, 1992.

**1268**

Kurt W. Maier, English, Lucas, Priest & Owsley, Bowling Green, KY, for plaintiff.

John L. Caudill, Louisville, KY, Stuart Fischbein, U.S. Dept. of Justice, Tax Div., Washington, DC, for department of Treasury and IRS.

## MEMORANDUM OPINION

HEYBURN, District Judge.

The parties dispute the priority of certain liens attached to a parcel of land in Warren County, Kentucky. The realty had been owned by D.J. Barclay and his wife, Marjorie, as tenants by the entirety. The land has since been sold, and its entire proceeds will pass to the litigant who prevails in this suit.

D.J. and Marjorie Barclay became owners of seventy acres of land in June, 1972, as tenants by the entirety. The plaintiff, Raybro, sued D.J. Barclay in Florida some years later and recovered a judgment of nearly $150,000.00. In January, 1986, Raybro obtained a judgment lien against D.J. Barclay's interest in the Warren County property described above. D.J. Barclay's debt to Raybro now stands at nearly $237,000.00.

The Barclay family had encountered tax difficulties during this period, as well. The Internal Revenue Service identified shortfalls in three of the Barclays' joint tax returns. The I.R.S. secured this debt in January and September, 1988, by filing tax liens against all property owned by D.J. and Marjorie Barclay. The United States is currently owed nearly $328,000.00.

Marjorie died in November, 1988. Raybro and the United States asked this Court to sell the Warren County property, by then held solely by D.J. Barclay as the surviving spouse, and to determine the priority of their liens. The sale of the land yielded net proceeds of $1,717.00. This modest amount remains to be distributed to the party this Court identifies as the senior lienholder.

## ANALYSIS

Federal law grants a lien to the United States against all property held by citizens who fail to pay taxes. 26 U.S.C. § 6321. This lien is subordinate, however, to security interests perfected by other creditors before the United States provides public notice of its tax lien. 26 U.S.C. § 6323. Competing security interests qualify for priority only when they have been "perfected", which occurs at the moment that "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Pioneer Am. Ins.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 1655–56, 10 L.Ed.2d 770 (1963). No controversy attends the effective date of the United States' lien: it was perfected by the notice filing of September, 1988, because it attached to the *joint* interests of D.J. and Marjorie Barclay in the Warren County land. It is equally clear that Raybro's lien, which encumbered the *sole* interest of D.J. Barclay, became perfected at least upon the date of Marjorie's November, 1988 death. The central question governing the priority of the liens in this case is whether Raybro's security interest was capable of perfection at some moment *before* D.J. Barclay became full owner of the land. The answer turns on whether D.J. Barclay's property rights before his wife's death were equivalent to the absolute ownership he later gained by right of survivor-

ship: in other words, whether the "property subject" to Raybro's lien in 1986 was identical to the joint interests subject to the United States' lien of September, 1988.

State law defines the nature of D.J. Barclay's interest in the property during the time prior to his wife's death. *United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110–11, 4 L.Ed.2d 1192 (1960).

Ancient property law had permitted the husband, but not the wife, to sell or encumber unilaterally land that the spouses held as tenants by the entirety. *Hoffmann v. Newell*, 249 Ky. 270, 60 S.W.2d 607, 610 (1932). This disparity resulted from the now-abandoned premise that the two spouses constituted one single legal person, which person was the husband. *Id.* A creditor in antiquity therefore could gain full immediate possession of marital land to recover a debt owed solely by the husband: in other words, the rights of the husband were virtually the same as those held jointly by husband and wife.

As early as 1846 Kentucky law addressed this inequity by insulating marital land from the husband's individual debts. *Id.* These statutes assured that a judgment against one spouse alone did not become a lien on the land during the joint lives of the spouses, but became enforceable only when the debtor-spouse became full owner by right of survivorship. *Id.* at 611. Under ordinary circumstances, then, the property interests of the individual spouses are inferior to their joint rights as tenants by the entirety: a creditor of one spouse cannot perfect a lien against the land itself until the land passes entirely into the hands of the debtor-spouse.

Though neither spouse can deliver full present possession or ownership of marital land by unilateral act, each spouse independently holds a severable, contingent interest in the estate: the right to succeed to the entirety of title upon the death of the other spouse. *Hoffmann* at 613. Kentucky statute further permits creditors to encumber land "in which the defendant has a contingent interest. . . ." Ky.Rev.Stat. 426.190. Thus a judgment creditor may obtain a lien against an individual spouse's

"expectant interest in survivorship" in marital land, even though the lien arises from a unilateral debt. *Hoffmann* at 613. The creditor indeed may foreclose upon this contingent interest immediately, during the spouses' joint lives, to satisfy the obligation owed by the debtor-spouse. *Id.* Raybro insists that this characteristic of Kentucky law assures priority to its 1986 lien. It contends that its right to seize and sell D.J. Barclay's contingent interest, which existed at the moment Raybro affixed its lien in 1986, granted Raybro a security interest in the whole property identical to that obtained by the United States' lien of September, 1988.

But this argument confuses D.J. Barclay's contingent interest of 1986 with his present fee simple interest, which came into existence only in November, 1988. A creditor who forecloses upon a debtor's contingent interest "takes the interest acquired upon its sale": that is, acquires the debtor's right of survivorship, not full title to the property. *Hoffmann* at 613. The interest acquired by the creditor is subject further "to the defeasance its very contingent nature demands" in the event the non-debtor spouse survives and acquires full ownership of the land. *Id.* Raybro indeed could have sold D.J. Barclay's *right of survivorship* as early as 1986, and perhaps might have realized some discounted portion of the land's full market value. But at issue before this Court is the distribution of proceeds resulting from the sale of D.J. Barclay's *fee simple* interest, not Barclay's contingent survivorship interest. Raybro's lien did not extend to a *fee simple* interest in the land until D.J. Barclay's contingent interest ripened into full ownership in November, 1988.

Raybro presents an impressive argument in its effort to assure itself a first lien against the property. But adoption of Raybro's position would require this Court to approve an anomalous and ultimately unsupportable configuration of security interests and rights. Let us assume, for purpose of argument, that Raybro could have obtained a first lien against the entire property by virtue of D.J. Barclay's individ-

ual debt. It is clear that Kentucky law would prohibit foreclosure of that lien until D.J. Barclay became sole owner by survivorship. The later tax lien attached to the Barclays' joint interests, and granted to the United States—the junior lienholder, in Raybro's analysis—the right of immediate foreclosure. As of that moment, then, Raybro would have held first right to the proceeds of the property's sale, but no right to foreclose; the United States possessed the right to foreclose, but effectively held no claim to the proceeds. The law cannot have intended to adopt such a self-defeating posture. Therefore, the Court must find that the United States holds the first lien.

To hold otherwise would also frustrate Kentucky's policy of protecting non-debtor spouses who hold land as a tenant by the entirety. Kentucky law allows creditors to attach a debtor-spouse's contingent interest in marital land to secure unilateral debt, but prevents creditors from foreclosing on the land itself until the debtor-spouse becomes full owner by survivorship. Creditors of *both* spouses are therefore assured priority for their liens against marital land, even though such liens arise later than those securing unilateral debt, since these joint-debt liens attach to present rather than contingent interests in the property. Under the scheme Raybro urges, a single spouse could effectively encumber marital land unilaterally: a later creditor would not take such land as security, even for joint debt, if that creditor would be entitled only to such proceeds that remain after the unilateral debt has been satisfied. Such a policy would deprive the non-debtor spouse of the full enjoyment of marital land, contrary to the intent of Kentucky law.

The United States' tax lien arose from a joint marital debt, and attached to the Barclays' present fee simple interest in September, 1988. Raybro's lien, though authorized by a 1986 judgment, arose from a unilateral debt and attached initially only to the debtor-spouse's contingent right of survivorship. Raybro thus did not become perfected as to land itself until D.J. Barclay became full owner in November, 1988. The United States will be adjudged to hold

the first lien, and adjudged to be entitled to the proceeds deposited with this Court, in an accompanying order.

### ORDER

This matter is before the Court on the recommendation of Magistrate Judge Dixon for determination of the priority of liens and for distribution of proceeds on deposit with this Court. The Court having thoroughly reviewed this matter, having set forth its findings in a memorandum opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the United States be adjudged to hold the first lien on all proceeds resulting from the sale of the subject property and that distribution of the proceeds be made accordingly.