RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

       *Plaintiff-Appellant,*

   *v.*

             No. 11-5032

MALCOLM C. WINSPER, BARBARA L.
WINSPER,

       *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:08-cv-631—John G. Heyburn, District Judge.

Argued: April 12, 2012

Decided and Filed: May 10, 2012

Before: GUY and DONALD, Circuit Judges; O'MEARA, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Ivan C. Dale, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Harry B. O'Donnell IV, Louisville, Kentucky, for Appellees. **ON BRIEF:** Ivan C. Dale, Gilbert S. Rothenberg, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Harry B. O'Donnell IV, Louisville, Kentucky, for Appellees.

_____

## OPINION

_____

   RALPH B. GUY, JR., Circuit Judge. The United States of America appeals from the district court's final decision denying its motion to foreclose tax liens against

_____

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

residential property, owned by defendants Malcolm C. Winsper and his wife Barbara L. Winsper, pursuant to 26 U.S.C. § 7403.  The district court entered summary judgment reducing to judgment the tax assessment against Malcolm Winsper only, but denied foreclosure of the entire property in reliance on the discretion recognized in *United States v. Rodgers*, 461 U.S. 677, 709 (1983).  Finding an abuse of that discretion, we reverse and remand for further proceedings consistent with this opinion.

## I.

The United States filed this action in December 2008, seeking to reduce to judgment separate federal tax assessments against Malcolm and Barbara Winsper, individually (counts 1 and 2), and to foreclose the tax liens against the real property they owned as tenants by the entirety at 410 Belgravia Court, Louisville, Kentucky ("the property") (count 3).  The assessments against Malcolm Winsper, made in February 1999, arose out of his failure to file returns, report income, or pay income tax for the years 1986 through 1993.  His liability in unpaid taxes, penalties, and interest totaled $901,052.17 as of January 30, 2010.  A separate assessment of $50,575.00, plus penalties and interest, was made against Barbara Winsper in 2003 based on an audit of the tax return she filed for the year 2000, which declared taxable income of $475,119.00. Notices of federal tax liens were filed against the property, although the government stipulated in this case that Fifth Third Bank had a superior mortgage lien that would be paid from the proceeds of the sale in accordance with its priority.

The Winspers filed an answer to the complaint, but failed to respond to the discovery requests that followed.  The United States moved for summary judgment in January 2010.  Defendants filed a response in opposition in April 2010, and finally responded to the earlier discovery requests in May 2010.  Before the district court decided the motion for summary judgment, however, Barbara Winsper paid $40,227.30 in full satisfaction of her own tax liability.  That resulted in the dismissal of the claims against her personally, although she continued to be an indispensable party as a non-delinquent third party with an interest in the property.  On July 6, 2010, the district court granted summary judgment to the government with respect to the assessment against

Malcolm Winsper and reduced the tax liability to judgment as of January 30, 2010, in the amount of $901,052.17. That decision, which is not contested on appeal, did not reach the question of foreclosure but directed the United States to file a separate motion seeking that relief.

The government did so, filing a motion for foreclosure of the lien and sale of the entire property to partially satisfy Malcolm Winsper's tax liability. Since the property was held by the Winspers as tenants by the entirety, Malcolm Winsper's individual tax lien attached to his partial contingent survivorship interest in the property. *See Raybro Elec. Supplies, Inc. v. Barclay*, 813 F. Supp. 1267, 1269 (W.D. Ky. 1992); *United States v. Real Prop. Located at 5205 Mount Howard Court, Louisville, Ky.*, 755 F. Supp. 169, 172-73 (W.D. Ky. 1990). Defendants urged the district court to exercise its limited discretion to disallow a forced sale of the entire property, and the parties submitted sworn declarations in support of their positions.

Significantly, the government offered evidence, which was uncontested, that Malcolm Winsper's partial interest would have minimal value if sold separately. The district court agreed that few buyers would consider purchasing such an interest. As for the value of the entire property, defendants provided an appraisal from 2006 that estimated the value to be $136,000. The government estimated the value to be $300,000 based on an inspection by an IRS Property Appraisal and Liquidation Specialist (PALS), although it was agreed that a judicial sale would be expected to bring roughly 80% of that fair market value or $240,000. The district court, faulting the government for not providing an actual appraisal but believing the defendants' appraisal undervalued the property, concluded that "the real value of the property is more likely to be $200,000 and that, therefore, the property would bring $160,000 at a foreclosure sale." A payoff letter from Fifth Third Bank reflected that its mortgage interest and principal was $14,572.36 as of October 10, 2010. The district court estimated that, after payment of the mortgage and expenses of the sale, and assuming a 50/50 division of the proceeds, the United States and Barbara Winsper each could be expected to receive $71,500 from a forced sale of the entire property.

Through her own declaration in August 2010, Barbara Winsper stated that she and her husband, ages 60 and 68, respectively, had been married for 34 years and had lived at 410 Belgravia Court for the last 29 years.  She explained that she had paid her own tax liability in order to avoid foreclosure, so was "stunned and appalled" that the government continued to pursue it.  With respect to her own finances, Barbara Winsper averred that, despite having college degrees in History and English, her employment prospects were limited due to her age and the economy; that she had worked for the past two years as a nursing assistant clearing $12.00 per hour; and that she expected her future income to be limited to the $250-per-week payments she was receiving from a trust fund and an unspecified amount in Social Security retirement benefits.  Also, the 1894 Victorian home had "enormous sentimental value" to Barbara Winsper because she had worked countless hours restoring it with her own hands, and it was the place where she had experienced "births, deaths and all the events that make up our lives."  Finally, Barbara Winsper stated that she would incur substantial moving expenses in the event of foreclosure and that, although her "emotions and labor add nothing to the market value," they are what makes it her "Home," and if she was "forced out, it would be impossible for [her] to ever find another place to live, like [her] Home, at any cost."

In orders entered September 23 and November 4, 2010, the district court discussed the *Rodgers* factors; solicited further briefing of Kentucky law, the value of the property, and the amount or portion of the proceeds due to other creditors; denied the government's motion to reopen discovery regarding the value of the property and matters relevant to the *Rodgers* factors; and finally concluded, after revisiting the *Rodgers* factors, that "the United States has not presented sufficient evidence supporting the exercise of its authority to force the sale of the property and collect Mr. Winsper's share of the sale."  This timely appeal followed.

## II.

## A.        Legal Framework

The failure to pay federal taxes after demand empowers the government to place a lien in favor of the United States "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; *see United States v. Rodgers*, 461 U.S. 677, 681-82 (1983). Further, "although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." *Id*. at 683. Raising no challenge to the determination of Malcolm Winsper's tax liability, defendants also concede that Malcolm Winsper's interest in the property he possesses with his non-delinquent wife as tenants by the entirety under Kentucky law constitutes property, or the right to property, to which a federal tax lien may attach. *See United States v. Craft*, 535 U.S. 274, 288 (2002); *United States v. Barczyk*, 434 F. App'x 488, 492 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1118 (2012).[1]

The United States has a "formidable arsenal of collection tools," including the authority under 26 U.S.C. § 7403 to bring an action in the district court for judicial sale of any property of the delinquent taxpayer, or any property in which the delinquent taxpayer has any right, title or interest. *Rodgers*, 461 U.S. at 683. In an action brought under § 7403, the district court adjudicates all matters, determines all claims and liens against such property, and, when a claim or interest of the United States is established, "may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). Foreclosure under § 7403 contemplates a forced sale of the entire property, not merely the delinquent taxpayer's interest, and is consistent with due process. *Rodgers*, 461 U.S. at 694, 697-98. However, because the sale and distribution language is permissive, the Court in *Rodgers* also recognized that

---

[1]Although the Court in *Rodgers* distinguished the homestead rights at issue in that case from the distinct problem posed by the legal fiction governing tenancies by the entirety in some states (like Kentucky and Michigan) that neither spouse possesses an independent interest in the property, the Court subsequently held in *Craft* that this fiction did not prevent tenants by the entirety under Michigan law from possessing property, or rights to property, to which a federal tax lien may attach. *See Rodgers*, 461 U.S. at 702 n.31; *Craft*, 535 U.S. at 288.

"§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and that some limited room is left in the statute for the exercise of reasoned discretion." *Id*. at 706.

Exercise of such "limited equitable discretion in individual cases can take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id*. at 709. This discretion is not unbridled, however, and there are "virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *Id*. Even when the interests of third parties are at issue, the Court explained that a "certain fairly limited set of considerations will almost always be paramount." *Id*. at 710. After identifying four nonexhaustive factors to be considered, the Court emphasized in conclusion that "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id*. at 711.

**B.     Analysis**

The district court's decision not to order foreclosure of the entire property is reviewed for abuse of discretion. *See United States v. Barr*, 617 F.3d 370, 376 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1678 (2011). A district court abuses its discretion when its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). In this case, the government contends that the district court abused its discretion by misapplying three of the four *Rodgers* factors and by improperly placing the burden on the government to justify foreclosure of the entire property.

**1.     Burden of Proof**

Despite having accurately described the issue in an earlier order, the district court's final order denying foreclosure mischaracterized the *Rodgers* factors as "govern[ing] whether the *United States* may use *its* limited discretion to foreclose on

property which implicates ownership interest of an 'innocent' third party." (Emphasis added.)   On the contrary, the *Rodgers* factors do not address the scope of the *government's* discretion to foreclose, but, rather, the *district court's* discretion *not* to foreclose.   This confusion appears to have infected the decision, as the district court concluded that "the United States has not presented sufficient evidence supporting the exercise of its authority to force the sale of the property and collect Mr. Winsper's share of the sale."  60, p. 3-4.)  This court clarified in *Barr* that *Rodgers* "did not mandate application of the four-factor balancing test before a district court could order a sale under § 7403."  *Barr*, 617 F.3d at 375-76.   Rather, "before exercising its limited discretion *not to* order the sale, a district court must justify that decision by means of the *Rodgers* balancing test."  *Id*. at 376 (emphasis added).

### 2.      Balancing Factors

The *Rodgers* factors are not to be used as a "'mechanical checklist' to the exclusion of common sense and consideration of special circumstances," but the court's limited equitable discretion must be exercised "rigorously and sparingly."  *Rodgers*, 461 U.S. at 711.

### a.      Prejudice to Government

First, "a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest [belonging to the party] actually liable for the delinquent taxes."  *Id*. at 710.  The Court in *Rodgers* explained that there would be no reason to force a sale of the entire property if the value of the delinquent taxpayer's partial interest is likely to be equal to or greater than its value as a fraction of the total value of the entire property.  *Id*.  But, there is no question that Malcolm Winsper's partial contingent interest has minimal, if any, independent value.   Also, there would be no prejudice to the government from disallowing forced sale of the entire property if the proceeds of a partial sale could be expected to fully satisfy the indebtedness; if the indebtedness could be satisfied out of other property owned solely by the delinquent taxpayer; or if the non-delinquent third

party's interest "could be expected to lapse in the relatively near future." *Id*. at n.41. None of these circumstances are present in this case either. Finally, even when the partial interest would be worth less if sold separately, "the possibility of prejudice to the Government can still be measured as a matter of degree." *Id*. That is, "the higher the expected market price [of the partial interest], the less the prejudice, and the less weighty the Government's interest in going ahead with a sale of the entire property." *Id*. Given the minimal value of Malcolm Winsper's partial interest, the government has a greater interest in a forced sale of the entire property.

Without finding to the contrary, the district court concluded that this factor "does not weigh heavily for either side" because "the taxes have been due and owing for over a decade and the sale will result in collection of only a small portion of it." Neither of these considerations is mentioned in *Rodgers*, however, and the government persuasively argues that neither negates the prejudice to its financial interests that will result from being limited to a forced sale of the partial interest in this case. First, although the district court seems to have relied on the discussion in *United States v. Reid*, 127 F. Supp. 2d 1361, 1385 (S.D. Ga. 2000), it was not simply the passage of time in *Reid*, but also a finding that dilatory conduct by the government had contributed to its inability to collect the tax. Without deciding whether the government's conduct would be an appropriate consideration, *Reid* is not analogous to this case. Moreover, if the age of the assessment were to weigh against a finding of prejudice, it would penalize the government for pursuing other less-disruptive means of collection first, and it would encourage the institution of judicial foreclosure actions earlier in the ten-year period for collection of assessments under 26 U.S.C. § 6502(a)(1). The age of the assessment does not lessen the prejudice to the government's financial interests that would result from being limited to the sale of the delinquent taxpayer's partial interest.

Second, although defendants argue that it is reasonable to consider what "fraction" or "percentage" of the tax liability might be satisfied, the only support for this view is the reference in *Reid* to the fact that any proceeds would satisfy only a "tiny fraction" of the tax liability. *Reid*, 127 F. Supp. 2d at 1382 ("Even if the Government

levied on Reid's interest in the Flagler Road residence, which is subject to exemptions, prior security interests, and the rights of parties in possession, any proceeds would satisfy only a tiny fraction of Reid's tax liability, which may be as great as $500,000."). It is hardly clear from this reference that the court was making the distinction urged in this case—consideration of the percentage of the debt that would be satisfied rather than the dollar amount that would be collected—particularly when the rest of the discussion makes clear that there was no evidence at all in the record about the value of the property to be sold. Moreover, this is inconsistent with the focus in *Rodgers* on the amount that could be expected from the sale of the taxpayer's partial interest as compared to the sale of the entire property; not a comparison (percentage or otherwise) between the amount of the proceeds and the extent of the tax liability. To find an absence of prejudice because the percentage of the debt satisfied may be small would tend to favor delinquent taxpayers with the largest tax liability (*i.e.*, the greater the debt, the smaller the percentage of that debt would be satisfied in most cases by a forced sale under § 7403).

The district court misapplied this factor in finding no prejudice to the government's financial interests if it were to be relegated to a forced sale of Malcolm Winsper's partial interest as a tenant by the entirety with his non-delinquent spouse.

### b.        Third Party's Expectations

The second factor asks "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Rodgers*, 461 U.S. at 710. Absent such an expectation, "there would seem to be little reason not to authorize the sale." *Id.* at 711. The Court recognized a continuum of such expectations and explained that "this factor is amenable to considerations of degree." *Id.*

The government concedes that Kentucky law provides a legally recognized expectation that property owned by a husband and wife as tenants by the entirety will not be subject to forced sale to satisfy the debts of one spouse. *See Raybro*, 813 F. Supp.

at 1269-70; *Real Property*, 755 F. Supp. at 173.[2]  Once she was no longer a delinquent taxpayer herself, Barbara Winsper had a legally recognized  expectation that the entire property would not be subject to forced sale to satisfy her husband's separate tax liability.  Accordingly, the district court properly found that this factor weighed in favor of Barbara Winsper and the exercise of discretion not to foreclose the lien and force the sale of the entire property.[3]

### c.      Prejudice to Third Party

Third, the court should consider the likely prejudice to the non-liable third party both in "personal dislocation costs" and "the sort of practical undercompensation described [in the context of the sale of a homestead interest]."  *Rodgers*, 461 U.S. at 711. Although § 7403 allows for the conversion of a non-delinquent spouse's homestead estate into its fair cash value, the Court recognized that "in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head."  *Id*. at 704.  The problem of undercompensation is particularly acute in the case of a homestead interest, which may have a value less than the price of a lifetime interest in an equivalent home and must be based on actuarial statistics that will unavoidably undercompensate those who live longer than average.  *Id*.

Finding that this factor favored Barbara Winsper, the district court explained that "the relatively small amount of proceeds . . . , estimated at no more than $71,500, will not permit Mrs. Winsper to relocate to other reasonable housing."  The government argues that this is mere speculation unsupported by the record.  Barbara Winsper's declaration represented her future income as limited and asserted that if forced from her

---

[2]The unpublished decision in *Peek* is not to the contrary as the foreclosure was not an account of the husband's lien, but an account of a bank mortgage owed by both husband and wife.  See *Peek v. Commonwealth of Ky.,Office of Workers' Claims, Uninsured Employers' Fund*, No. 2007-CA-000678-MR, 2008 WL 1991698, *2 (Ky. App. 2008) (holding lien to be satisfied out of husband's half of the proceeds).

[3]One caveat, however, is that the government argues elsewhere that because of the late payment of Barbara Winsper's tax liability no discovery was conducted on questions relating to the *Rodgers* factors prior to its motion for summary judgment.  In *Barr*, this court approved the district court's finding that the non-delinquent spouse's legally recognized expectation was not entitled to much weight because she had "'participated in the conveyance of four properties . . . specifically contemplated to frustrate the United States' tax collection efforts.'"  *Barr*, 617 F.3d at 376 (citation omitted).

home she would be unable to purchase another.  It is not self-evident, however, that the expected distribution of $71,500 would be insufficient to allow her to find  "other reasonable housing."  Nor is there any indication of how much she could expect to incur in "substantial moving expenses."  It may be that Barbara Winsper would suffer prejudice in the form of practical undercompensation, but there is no support for such a finding on this record.

Barbara Winsper also attested that her home of some 30 years had irreplaceable sentimental value to her that made it a "home" and "not just a house or a piece of 'Real Property.'"  However, "this third factor envisions some special circumstances of prejudice to the non-liable third party."  *Bierbrauer*, 936 F.2d at 376.  Such circumstances would include personal dislocation costs that were "greater than in any other foreclosure against a residence to satisfy a tax lien."  *Id.* at 375.  However, if "'the inherent indignity and inequity of being removed from one's home' should automatically tip the scales in [the third party's] favor, . . . the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403."  *Id.* at 375-76; *see also United States v. Barr*, No. 11717, 2008 WL 4104507 (E.D. Mich. Sept. 2, 2008), *aff'd* 617 F.3d 370 (6th Cir. 2010).  The hardship of having to leave a home with enormous sentimental value itself would not present special circumstances of prejudice that weigh against foreclosure of the entire property.

### d.      Liable vs. Non-Liable Interests

Fourth, "a court should consider the relative character and value of the non-liable and liable interests held in the property."  *Rodgers*, 461 U.S. at 711.  For example, if the non-liable party has no present possessory interest or fee interest in the property, "there may be little reason not to allow the sale."  *Id.*  However, if the third party not only has such an interest, "but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed."  *Id.*  The district court concluded that "assuming Mrs. Winsper's current interest in the property is only 50 percent, that is substantial compared to her husband's interest, and, there is a reasonable possibility that her interest could be greater than 50 percent."

Malcolm and Barbara Winsper have identical rights in the property they hold as tenants by the entirety under Kentucky law. *See Cowan v. Pleasant*, 263 S.W.2d 494 (Ky. 1953). There seems to be no dispute that Kentucky law provides for equal division of the property upon divorce or termination of a tenancy by the entirety. *See Cowan*, 262 S.W.2d at 496; *Nelson v. Mahurin*, 994 S.W.2d 10, 15 (Ky. App. 1998). Any claim that Barbara Winsper might have an interest in the property greater than 50% based on the likelihood that she will outlive her husband is precluded by this court's decision in *Barr*. *Barr*, 617 F.3d at 372. There, this court reasoned that because Michigan law provides for equal division of such property upon divorce or consensual sale, "differences in life expectancy do not result in different survivorship interests." *Id*. at 374; *see also Barcyzk*, 434 F. App'x at 494 (holding that non-delinquent spouse had equal interest as tenant in the entirety under Michigan law in proceeds of forced sale under § 7403). Defendants have not offered a compelling reason to disregard a presumption that the Winspers' interests in the property are of equal character and value.

That being the case, however, this factor does not weigh heavily for or against allowing the sale of the entire property to proceed because, while Barbara Winsper has a possessory and fee interest in the property, there seems no reason to believe her interest swamps the interest of the delinquent taxpayer. *Barr*, 617 F.3d at 377 n.1 (Batchelder, J., dissenting in part).

## III.

Given the misstatements regarding the burden of proof and errors in the application of the first and third factors, the order denying foreclosure is **REVERSED** and the matter **REMANDED** for the district court to reconsider whether to exercise its limited discretion not to order foreclosure of the entire property. Because the estimated value of the property and other relevant circumstances may have changed during the pendency of this appeal, appropriate reconsideration must include an opportunity for additional discovery with respect to the *Rodgers* factors.