NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-2363 & 16-1451

_____

UNITED STATES OF AMERICA

v.

DUSTIN B. BOGART;
SOUTHERN COUNTRY RANCH;
MARCY A. BOGART

Dustin B. Bogart; Marcy A. Bogart,
                                    Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 4-12-cv-00347)
District Judge:  Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on June 22, 2017
Before:  AMBRO, KRAUSE, and NYGAARD, Circuit Judges

(Opinion filed: October 27, 2017)

_____

OPINION[*]

_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Dustin and Marcy Bogart appeal from the orders of the United States District Court for the Middle District of Pennsylvania granting the United States' motions for summary judgment and for order of sale, and denying their post-judgment motions for relief. For the following reasons, we will affirm the grant of summary judgment and order of sale, but will vacate, in part, the order denying the post-judgment motions, and will remand the matter.

I.

Appellee United States made assessments against Dustin Bogart for unpaid taxes for the years 2000-2003. Bogart failed to pay the assessments, and the Government filed suit in the Middle District of Tennessee to reduce to judgment the assessments, to foreclose on federal tax liens against real property located in Tennessee, and to force a sale of the property, pursuant to 26 U.S.C. § 7403. It also named as defendants Bogart's wife, Marcy, and Southern Country Ranch (SCR), an unincorporated business trust organization (UBTO), because they might claim an interest in the property. See 26 U.S.C. § 7403(b).

In July 2014, the District Court granted summary judgment in favor of the United States. See United States v. Bogart, No. 3:12-cv-179, 2014 WL 3670043 (M.D. Tenn. July 24, 2014). It determined that the Government had established, through Certificates of Assessments and Payments, that Bogart had a tax liability exceeding $300,000 (including penalties and interest). It rejected the Bogarts' "tax protester" arguments and their attacks on the reliability of the Certificates of Assessments and Payments. It credited the Government's evidence in support of its claim that Bogart had engaged in a

2

tax-evasion scheme to shield his income and assets from the Government by creating several UBTOs, including SCR, to hide his income. The District Court concluded that Bogart was the equitable owner of the Tennessee property and that SCR held title to the property as Bogart's nominee or alter ego.[1]

Meanwhile, the United States filed this companion action against the same defendants[2] in the Middle District of Pennsylvania, seeking a declaration regarding the validity of tax liens against real property located at 792 Brush Valley Road (also known as RR 5 Box #1100), Sunbury, Pennsylvania ("the Pennsylvania property"), and a judicial sale of the property. The District Court, adopting the Magistrate Judge's Report and Recommendation ("R&R"), granted summary judgment in favor of the Government. The Court rejected the Bogarts' arguments that the tax liability was unlawful and improper as barred by res judicata resulting from the District Court's judgment in Tennessee. It also found that the Bogarts failed to dispute the Government's evidence, which established the Bogarts were the equitable owners of the Pennsylvania property, and that SCR held title to the property as their nominee/alter ego. As a result, the Court held that the United States was entitled to satisfy the tax liabilities by foreclosing on the Pennsylvania property. The Government subsequently filed a motion for entry of an

---

[1] The Bogarts appealed, and the Sixth Circuit affirmed the grant of summary judgment. See C.A. No. 14-6225 (6th Cir. June 29, 2015).

[2] Jerry Speer, listed as a trustee of SCR, was added as a defendant to the Pennsylvania suit.

3

order of sale pursuant to 28 U.S.C. §§ 2001 and 2002, which the District Court granted. The Bogarts appealed.[3]

After the Pennsylvania property was sold, the District Court granted the Government's motion for distribution of the sales proceeds. Pursuant to the Judgment of Sale, all proceeds from the sale (less expenses) were distributed to the United States in satisfaction of the lien. The Bogarts filed post-judgment motions, including a motion to vacate the order authorizing distribution of sale proceeds. The District Court denied the motions, and the Bogarts appealed. The two appeals have been consolidated for purposes of disposition.

II.

---

[3] This appeal, docketed at C.A. No. 15-2363, was filed more than sixty days after the District Court's order granting summary judgment. See Fed. R. App. P. 4(a)(1)(B) (requiring that if the United States is a party, a notice of appeal in a civil case must be filed within 60 days after the order appealed from is entered on the District Court's docket). The time limits for filing a notice of appeal are "mandatory and jurisdictional." Bowles v. Russell, 551 U.S. 205, 209 (2007) (citation omitted). We agree with the Government, however, that the appeal was timely, as it was filed within sixty days of the order granting a judgment of sale. See Burlington, C.R. & N. Railway Co. v. Simmons, 123 U.S. 52, 55-56 (1887) (focusing on whether the trial court had entered a decree of sale in distinguishing between final and non-final orders in foreclosure cases). In granting summary judgment in this case, the District Court concluded that the Government was entitled to foreclose on the tax liens; this did not end the litigation on the merits, however, as the Government had sought a sale of the property as part of its relief. See Grant v. Phoenix Mut. Life Ins. Co., 106 U.S. 429, 431 (1882) ("[A] decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal."); accord Citibank, N.A. v. Data Lease Fin. Corp., 645 F.2d 333, 337 (5th Cir. 1981); United States v. Davis, 815 F.3d 253, 256-57 (6th Cir. 2016). Accordingly, the order of sale is a final, appealable order from which the notice of appeal was timely filed.

4

<u>Summary Judgment</u>

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a grant of summary judgment. <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 422-23 (3d Cir. 2006). We "view the facts and draw inferences in the light most favorable to the nonmoving party," and, as the Bogarts proceed pro se, we must liberally construe their filings. <u>Ray v. Township of Warren</u>, 626 F.3d 170, 173 (3d Cir. 2010); <u>Renchenski v. Williams</u>, 622 F.3d 315, 337 (3d Cir. 2010).

On appeal, the Bogarts persist with their challenges to the District Court's jurisdiction and to the legality of the tax assessments. They also argue that they were denied discovery and a "mandatory" hearing pursuant to Fed. R. Civ. P. 12(i). It is clear that the District Court had subject matter jurisdiction over this case. <u>See</u> 26 U.S.C. § 7402(a) (granting the district courts jurisdiction over civil actions brought pursuant to § 7403); 28 U.S.C. § 1340 (granting the district courts jurisdiction over "civil action[s] arising under any Act of Congress providing for internal revenue"); 28 U.S.C. § 1345 (granting the district courts jurisdiction over "all civil actions, suits or proceedings commenced by the United States"); <u>see</u> <u>also</u> <u>United States v. Sloan</u>, 939 F.2d 499, 501 (7th Cir. 1991) (rejecting "tax protester" arguments respecting jurisdiction). And we agree with the District Court that they are barred by res judicata from arguing the validity of the tax liabilities for the years 2000-2003. <u>See</u> <u>C.I.R. v. Sunnen</u>, 333 U.S. 591, 598 (1948) ("if a claim of liability or non-liability relating to a particular tax year is litigated,

5

a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year"). Accordingly, the District Court did not abuse its discretion in denying discovery of evidence related to the tax assessments.

Contrary to their contention on appeal, the Bogarts wholly failed to dispute the Government's evidence at summary judgment establishing that Dustin Bogart was indeed the nominee of SCR and that he had used it to conceal his equitable ownership of the Pennsylvania property.[4] See G.M. Leasing Corp. v. United States, 429 U.S. 338, 351 (1977) (noting that the Government may properly levy against property of a delinquent taxpayer's alter ego); Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability."). As the District Court noted, the Bogarts' "affidavit" in response to the Government's motion for summary judgment

> focuses largely on [their] idiosyncratic view that they have no taxable income, and fails to address in any meaningful way the government's evidence tying the Bogarts to an interlocking web of UBTOs and bank accounts, trusts and accounts which are used over time in a kaleidoscopic fashion to conceal the ownership of certain properties and obscure the fact that

---

[4] We note that, although the District Court determined that SCR was both the "nominee" and "alter ego" of Bogart, the concepts are distinct. Under a nominee theory, the Government may levy upon only those assets to which a third party holds legal title, but from which the delinquent taxpayer enjoys the true beneficial ownership. See Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000); In re Krause, 637 F.3d 1160, 1165 (10th Cir. 2011). Under an alter ego theory, however, the Government may seize all of the assets of an alter ego corporation if the separate entity is merely a sham. Oxford Capital Corp., 211 F.3d at 284. Nevertheless, we find that the distinction has no bearing on this case, as there is no indication that SCR owns any assets other than the Pennsylvania property, and the Government seeks to foreclose only on that asset. Accordingly, whether SCR is the nominee or alter ego of Bogart, the effect on the Government's lien is the same. For ease, we will refer to SCR as Bogart's nominee.

> payments relating to the enjoyment and use of those properties are being made by the defendants using money derived from their business.

R&R at 20-21.

The IRS is authorized to attach a lien on all "property and rights to property" of any taxpayer who fails to pay federal taxes. 26 U.S.C. § 6321. Federal courts must look to state law to determine the taxpayer's ownership interest in the property, including the question whether the titleholder is merely a nominee. See Drye v. United States, 528 U.S. 49, 58 (1999); United States v. Rodgers, 461 U.S. 677, 683 (1983). The District Court considered the following factors in determining whether SCR was Bogart's nominee:

> (1) whether little or no consideration or inadequate consideration [was] paid by the nominee for an asset; (2) whether the property was placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (3) the existence of a close relationship between transferor and the nominee; (4) any failure to record conveyance; (5) the retention of possession by the transferor; (6) continued enjoyment by the transferor of benefits of the transferred property; and (7) whether the taxpayer expended personal funds to purchase and maintain the property.

R&R at 30 (citing United States v. Klimek, 952 F. Supp. 1100, 1113 (E.D. Pa. 1997)). These factors, which were also considered by the Sixth Circuit in determining whether SCR was Bogart's nominee with respect to the Tennessee property, parallel those considered by Pennsylvania courts in determining whether a transfer of property is fraudulently made to evade debts or other obligations. See e.g. Mid Penn Bank v. Farhat,

7

74 A.3d 149, 153-54 (Pa. Super. Ct. 2013); see also Great Oak Building & Loan Ass'n v. Rosenheim, 19 A.2d 95, 96 (Pa. 1941) ("An owner of real estate cannot transfer the registered title to another, retaining the beneficial interest to himself and thereby escape liability for taxes.").

The District Court properly applied the above factors to the uncontested facts in determining that "the bewildering array of UBTOs used by the Bogarts were simply nominees and alter ego entities designed to frustrate a lawful tax levy."[5] There is little we can add to the Magistrate Judge's thorough report on this issue. Although the record contains self-serving affidavits from the Bogarts, and an affidavit from Jerry Speer, averring that Speer has been the Trustee of SCR since 2004, this evidence is insufficient to create a genuine issue of fact in light of the overwhelming evidence SCR was merely a nominee. See 26 U.S.C. § 6322; Fourth Inv. LP v. United States, 720 F.3d 1058, 1070 (9th Cir. 2013) (federal lien attaches where debtor or debtor's nominee holds title to the property at the time of assessment). In particular, the evidence demonstrated that Dustin Bogart used funds from a bank account, to which the Bogarts were the only authorized signatories, to pay off the mortgage for the Pennsylvania property in 2005 and to pay the property taxes in 2006. See Nobel v. Morchesky, 697 F.2d 97, 103 (3d Cir. 1982) ("Pennsylvania considers the person or entity 'whose funds are used for the purchase of real property the equitable owner of the property.'") (citation omitted). Indeed, SCR had

---

[5] It is not significant, for purposes of determining whether Dustin Bogart had an interest in the Pennsylvania property, that the District Court also found that SCR was the nominee of Marcy Bogart.

8

no bank account associated with it from which to pay property expenses. Furthermore, the property was transferred—for little consideration—twice in 2004, and again in 2005; each time, Dustin Bogart was listed as the Trustee of SCR on the recorded deeds. Lastly, the Bogarts continued to reside at the property after transferring it to SCR.

Alternatively, the Bogarts argue that the federal tax lien could not attach to Marcy Bogart's interest in the Pennsylvania property because she shared it with her husband as tenants by the entireties. There is no debating that the Bogarts initially owned the Pennsylvania property as tenants by the entireties.[6] The Government specifically alleged in its complaint that the Bogarts acquired title in 1998 "as tenants by the entireties," transferring it to SCR in 2004. A deed evidencing the purchase was attached to the complaint. See also Johnson v. Johnson, 908 A.2d 290, 296 (Pa. Super. 2006) (holding Pennsylvania law creates a rebuttable presumption that property held by a husband and wife is held in tenancy by the entireties). At the summary judgment stage, the District Court was to determine whether Dustin Bogart, as the delinquent taxpayer, had an interest in the Pennsylvania property to which a valid tax lien could attach. See 26 U.S.C. §§ 7403(a), (c); United States v. Craft, 535 U.S. 274, 278 (2002) (noting courts "look initially to state law to determine what rights the *taxpayer* has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation") (emphasis added) (citation omitted).

---

[6] In contrast, it was unclear how the Tennessee property was initially acquired.

9

We reject the Government's argument that the tenancy by the entirety was destroyed when the Bogarts conveyed the property to SCR in 2004. It is clear under Pennsylvania law that a joint conveyance of property can sever a tenancy by the entirety. See Clingerman v. Sadowski, 519 A.2d 378, 381 (Pa. 1986). Here, however, the District Court determined that the conveyance was a sham, and that the Bogarts used SCR "to conceal their equitable ownership" of the Pennsylvania property. R&R at 7; see also Pitti v. Pocono Bus. Furniture, Inc., 859 A.2d 523, 526 (Pa. Commw. Ct. 2004) (holding that "a court may find a transaction to be a sham and unenforceable even though it complies with relevant legal requirements"). Although SCR is listed as the title-owner of the property, the District Court found it was a "Bogart-controlled entity" which "exist[s] only on paper"—"the Bogarts signed and initialed the purchase contract for the property on behalf of [SCR] as its Executive Trustees; and the funds used to purchase the property came from the Bogart[s'] bank accounts held in Pennsylvania." R&R at 10-11, 13. The effect of the District Court's determination that SCR was merely the Bogarts' nominee is that the property reverted back to the status quo prior to the transfers, that is, as property held by the Bogarts in tenancy by the entireties. See Appeal of Bd. of Sch. Dirs. of Owen J. Roberts Sch. Dist., 457 A.2d 1264, 1267-68 (Pa. 1983) (holding that owner who conveyed bare or "naked [legal] title" to property remained the real owner); Knoll v. Uku, 154 A.3d 329, 333 (Pa. Super. Ct. 2017) (holding that under Pennsylvania law, a fraudulent conveyance is "set aside," thereby invalidating the transfer); see also In re Krause, 637 F.3d 1160, 1165 (10th Cir. 2011) (a "nominee" of a debtor is one who "holds bare or apparent title to a particular asset that actually belongs to the debtor"); G.M.

10

Leasing Corp., 429 U.S. at 351 (noting that corporation's being an alter ego has "no countervailing effect for purposes of [taxpayer's] federal income tax. . . . It would then follow that the [United States] could properly regard [the alter ego's] assets as [taxpayer's] property subject to the lien") (citations omitted).

"[A]lthough the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." Rodgers, 461 U.S. at 683; see also Craft, 535 U.S. at 278. The Supreme Court has recognized that a federal tax lien may attach to tenancy by the entireties property to satisfy the tax obligation of one tenant. Id. at 283. In Craft, the Court analyzed Michigan law, finding that it conferred "some of the most essential property rights" on each tenant, and thus the debtor tenant had "rights to property" under the federal tax lien statute. Id. We have recognized that, despite the legal fiction that tenants by the entireties in Pennsylvania do not enjoy independent legal interests in the property, the state confers "essential property rights," similar to those conferred by Michigan, to which a federal tax lien may attach. See Popky v. United States, 419 F.3d 242, 244 (3d Cir. 2005). The Government's tax lien, therefore, could attach to Dustin Bogart's interest in the Pennsylvania property. Accordingly, the District Court properly granted summary judgment.

## Order of Sale

In light of this judgment, the District Court could order a forced sale of the property. Rodgers, 461 U.S. at 693-94 ("[W]e must read the statute [§ 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it)[.]"). The

11

Bogarts argue that the District Court should have exercised its discretion not to order the sale. See 26 U.S.C. § 7403(c) (once a claim of interest has been established, a district court "*may* decree a sale of the property") (emphasis added); see also Rodgers, 461 U.S. at 708-09 (reviewing an order of sale for abuse of discretion). However, this discretion is limited and "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 711. We find no abuse of discretion in the authorization of sale.

Courts must consider several factors where a § 7403 sale would cause undue hardship to an *innocent* third party: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) "the likely prejudice to the third party, both in personal dislocation costs and in ... practical undercompensation;" and (4) "the relative character and value of the non-liable and liable interests held in the property." Id. at 710-11.

We note initially that, to the extent the District Court's determination that SCR was also Marcy Bogart's nominee implies that she was not an "innocent" third party, the exercise of equitable discretion may not have been warranted. Regardless, though, an application of the Rodgers factors leads to the same result. First, there is no evidence that Bogart had any other assets the Government could attach to satisfy the tax debt, and his

12

partial interest has no significant independent value; the Government, therefore, had a strong interest in a forced sale of the property. See United States v. Winsper, 680 F.3d 482, 489-90 (6th Cir. 2012). Although the second factor would weigh against foreclosure "under normal circumstances," it is neutralized by the District Court's finding that Marcy Bogart participated in the transfer of the property in an attempt to frustrate the Government's efforts to collect Bogart's taxes. United States v. Barr, 617 F.3d 370, 376 (6th Cir. 2010); accord United States v. Bierbrauer, 936 F.2d 373, 376 (8th Cir. 1991). The third factor weighs against foreclosure because, as the property sale bore out, it was likely that Marcy Bogart's interest in the property would be undercompensated. See Rodgers, 461 U.S. at 704 ("in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head"). Finally, Marcy Bogart's interest was no greater than her husband's. See Popky, 419 F.3d at 245 ("Valuing the interests of tenants by the entireties equally accords with the longstanding Pennsylvania common law definition of tenancies by the entirety."). On balance, therefore, the factors did not warrant the exercise of the District Court's equitable discretion to decline to decree the sale.

## Distribution of Proceeds

Finally, the Bogarts argue that Marcy Bogart's tenancy interest entitles her to a share of the sales proceeds. In its motion for distribution of sales proceeds, the Government proposed that it receive all proceeds from the sale, less expenses, in satisfaction of the tax lien. Pursuant to the order of sale, once the Government filed a report of sale and a proposed distribution of proceeds, the Bogarts had 20 days within

13

which to object. Nevertheless, the District Court adopted the Government's proposal and ordered the distribution of funds in an order entered December 2, 2015, 14 days after the motion for distribution of sales proceeds was filed. The next day, the Bogarts filed a document in which they argued, inter alia, that due process requires that Marcy Bogart be compensated for her interest in the property through a portion of the sales proceeds. See District Court Docket, Doc. #133 at 10-11 (citing Rodgers, 461 U.S. at 697 ("if § 7403 allowed for the gratuitous confiscation of one person's property interests in order to satisfy another person's tax indebtedness, such a provision might pose significant difficulties under the Due Process Clause of the Fifth Amendment"). The District Court never ruled on the document. Subsequently, the Bogarts filed two post-judgment motions, including a motion to vacate the order distributing proceeds in which they made the same argument under Rodgers. In denying the motion, the District Court rejected the argument as "frivolous" and as having been "previously addressed." Because we find this argument to be neither frivolous nor previously decided, and the District Court failed to consider the Bogarts' timely objections to the motion for distribution of sales proceeds, we will vacate the District Court's order denying the post-judgment motion to the extent that it sought to vacate the order authorizing the distribution of sales proceeds.[7]

When a foreclosure sale takes place pursuant to a tax lien, the proceeds are to be distributed "according to the findings of the court in respect to the interests of the parties and of the United States," thus providing fair compensation both to the Government and

---

[7] We will affirm the order denying the post-judgment motions in all other respects.

14

to any third parties. § 7403(c); <u>Rodgers</u>, 461 U.S. at 693-94 (holding that § 7403 contemplates "the recognition of third-party interests through the mechanism of judicial valuation and distribution"). The issue whether Marcy Bogart maintained a compensable interest in the property as a tenant by the entireties was not addressed in the R&R or by the District Court. The Government argues that she has waived her right to assert an interest in the property. It maintains, in part, that she is bound by her answer to the complaint in which she denied an interest in the property; according to the Government, the answer constitutes a "judicial admission" which cannot be controverted. While we are doubtful that this response to the complaint amounts to a judicial admission[8], we leave it to the District Court to determine in the first instance whether Marcy Bogart had waived her right to assert an interest in the proceeds.[9] On remand, the Court should also consider whether its determination that Marcy Bogart is a nominee of SCR affects her right to a distribution of the proceeds. <u>See</u> <u>id.</u> at 698 ("We therefore see no contradiction, at least at the level of basic principle, between the enforcement powers granted to the Government under § 7403 and the recognition of vested property interests granted to

---

[8] A judicial admission is an assertion of fact that is binding on a party. <u>See</u> <u>Glick v. White Motor Co.</u>, 458 F.2d 1287, 1291 (3d Cir. 1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case."); <u>cf.</u> <u>Rodgers</u>, 461 U.S. at 683 (holding that whether a party has an interest in a property is a legal question, determined by state law). We note, too, that Dustin Bogart likewise denied an interest in the property in the answer to the complaint.

[9] We decline to address the Bogarts' argument on appeal that Dustin Bogart's mother, June Bogart, had an interest in the Pennsylvania property and was entitled to proceeds from the sale, preferring that the District Court address it in the first instance on remand.

*innocent* third parties under state law.") (emphasis added); but see Barr, 617 F.3d at 372-76 (holding that wife was entitled to proceeds from sale of property held in tenancy by the entireties despite evidence that she "assisted in shifting properties" and "bore some responsibility for the fact that the Government could only collect taxes from [her debtor husband] by foreclosure"); see also Bierbrauer, 936 F.2d at 376. Finally, if necessary, the District Court should determine whether the entire sales proceeds (less expenses) may be remitted to the Government in satisfaction of the tax lien. See Rogers, 461 U.S. at 691 ("the Government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the value of the property interests that are actually liable for that debt"); see also Popky 419 F.3d at 245 (valuing the interests of the tax-debtor and non-debtor spouses equally as tenants by the entireties under Pennsylvania law).

III.

In light of the foregoing, we will affirm the order of the District Court granting summary judgment and the order of sale. We will affirm in part and vacate in part the order denying the post-judgment motions, and will remand for further proceedings consistent with this opinion.[10]

---

[10] The Bogarts' "criminal complaint" and motion to vacate judgment and sale are denied. See Sewak v. INS, 900 F.2d 667, 673 (3d Cir. 1990) ("As an appellate court we do not take testimony, hear evidence or determine disputed facts in the first instance. Instead, we rely upon a record developed in those fora that do take evidence and find facts."). The motion to recuse is denied as it fails to allege an objective basis for disqualification or personal bias. See 28 U.S.C. § 455; see also Liteky v. United States, 510 U.S. 540, 555 (1994) (recusal not warranted merely because of repeated judicial rulings against the movant).

16